**CRYSTAL LAKES WATER AND SEWER ASSOCIATION,**
Plaintiff–Appellant,

v.

Christer and Donnette BACKLUND, Albert L. and Gwinette D. Bludau, Robert E. and Jean M. Brown, Donald S. Clarke, C. Francis Collopy a/k/a Mrs. Charles T. Collopy, Leonard J. and Consuela R. Dignard, Ralph N. and Doris P. Eberhardt, Estate of George W. Intfen and Estate of Barbara E. Intfen, Paul E. and Kathleen E. Kelly, James A. MacLagan, Donald B. and Faye M. Montgomery, Harrold R. and Patricia H. Moore, Edward J. and Mary Jane Morrison, RMS Company a/k/a Georgia Constitutional Trust # 2–1673, Arnold E. and Darlene H. Sanderson, Fred J. Schrecengost, Jr. and Virginia K. Schrecengost, Leslie J. and Maryel L. Shurtz, John R. and Rosemary Thorpe, John and Lois A. Thyfault, Charles R. and Merna C. Van Beber, Gary Vogel, Robert K. Warner, Barbara D. Warner, Robert B. Warner, and Leona M. Warner, and Frederick F. Wolf and Julia Wolf, Defendants–Appellees,

and

Alan D. Berryman, Division Engineer, Water Division 1, Appellee pursuant to C.A.R. 1(e).

No. 94SA242.

Supreme Court of Colorado,
En Banc.

Jan. 8, 1996.

Krassa, Lindholm, Kumli & Madsen, Robert F.T. Krassa, Karl F. Kumli, III, Robin A. Byers, Boulder, for Plaintiff–Appellant Crystal Lakes Water and Sewer Association.

Fischer, Howard & Francis, Gene E. Fischer, Steven G. Francis, Fort Collins, for Defendants–Appellees.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor Gener-

al, Patricia S. Bangert, Deputy Attorney General, Jennifer L. Gimbel, First Assistant Attorney General, Peter A. Fahmy, Assistant Attorney General, Natural Resources Section, Denver, for the Division Engineer, Water Division 1, Alan D. Berryman.

Justice LOHR delivered the Opinion of the Court.

This case requires us to determine whether any of the five claims for relief set out in the complaint filed by Crystal Lakes Water and Sewer Association (the Association) are within the jurisdiction of the District Court for Water Division 1 (water court).[1] The Association appeals an order of dismissal, in which the water court dismissed all five claims for relief based on the conclusion that they did not involve "water matters" and therefore were not within the court's subject matter jurisdiction under section 37–92–203(1), 15 C.R.S. (1990). We hold that the first two claims, which sought a declaratory judgment that certain defendant lot-owners are bound by the terms of a water court decree approving plans for augmentation, are "water matters" under section 37–92–203(1), and thus fall within the exclusive jurisdiction of the water court. We further hold that the water court has jurisdiction to resolve the other three claims, which involve the imposition and enforcement of assessments levied by the Association, as ancillary to the first two claims for relief. Therefore, we reverse the judgment of the water court and remand this case for further proceedings.

## I.

The Crystal Lakes development comprises fifteen subdivision filings for properties located northwest of Red Feather Lakes in Larimer County, Colorado.[2] In order to obtain water for the Crystal Lakes development,

the original developer sought to divert ground water in the bedrock aquifer in the basins of Lone Pine Creek and the North Fork of the Cache La Poudre River, which are tributary to the Cache La Poudre River. The original developer proposed that wells be utilized to supply water for the development and that existing water rights be committed to replace the water that would be depleted by the consumptive use of water from those wells. The proposal provided that, with limited exceptions, each well would supply water for only the residential unit on the lot on which the well was to be constructed.

The original developer applied for approval of plans for augmentation in two sequential cases. In 1974, the original developer filed an application in the District Court for Water Division 1 for approval of a plan for augmentation for 1,312 single-family residential units in case number W–7631–74. In 1977, the original developer applied to that same court for approval of a second plan for augmentation for 1,521 single-family residential equivalent units in case number W–8540–77. The two applications were combined and resolved by a single decree (Decree), in which the water court approved the combined plans for augmentation.[3] The Decree expressly provided that "[a]ll subsequent lot purchasers will be bound by the terms of this joint decree and this joint decree will be filed of record in Larimer County and thereby constitute a covenant running with the land . . . ." The Decree was entered on December 7, 1978, and recorded in the records of the Larimer County clerk and recorder on January 12, 1979.

The combined plans for augmentation cover the entire Crystal Lakes development as well as substantial areas of unplatted land.

---

1. Our jurisdiction over this appeal is derived from the Colorado Constitution and statutes. Colo. Const. art. VI, § 2; § 13–4–102(1)(d), 6A C.R.S. (1987) (excluding from the court of appeals' jurisdiction appeals from final judgments of district courts in "[w]ater cases involving priorities or adjudications"); see also C.A.R. 1(a)(2) & 1(e).

2. Because the water court dismissed this case based on the pleadings and without any eviden-

tiary hearing, we derive the facts primarily from the Association's complaint and the decree approving the plans for augmentation, as well as other documents in the record.

3. The plans for augmentation provided for water to meet the needs of 2,833 single-family residential equivalent units and a tourist area, and to irrigate ten acres of open space.

The combined plans for augmentation mandate that existing storage water rights be used to replace depletions to the stream system caused by the consumptive use of well water in the Crystal Lakes development. Specifically, the Decree states:

> The combined plans for augmentation herein decreed are detailed programs for the exchange of water which increases the supply of water available for beneficial use. The basis of the plans is the replacement to the stream system from storage water rights during times of need by water rights entitled thereto, of an amount of water equal to the depletion of the stream system caused by the development's use of water.

The Decree requires that water be stored in three reservoirs—Crystal Lake, Upper Lone Pine Lake, and Lower Lone Pine Lake—and remain available for release to replace out-of-priority depletions by the wells in the Crystal Lakes development. The amount of replacement water to be released, when needed, is based on the number of single-family residential equivalent units then built and the types of sewage disposal systems serving those units, plus the amount of water required to irrigate open space and to replace evaporation losses from open water surfaces. The replacement water formula, therefore, requires a determination of the number of single-family residential equivalent units that are subject to the Decree, as well as the type of sewage disposal system used by each such unit, at the time water is needed to satisfy senior rights. The combined plans for augmentation provide that if the water available in storage for release purposes is reduced below critical levels, water withdrawn by wells under the Decree will be rationed on a pro rata basis.

The Association, which was formed in 1974, is the entity responsible for implementing the provisions of the Decree. The Decree states that "[t]he obligations and rights attendant to this plan for augmentation shall be transferred and assigned to the Crystal Lakes Water and Sewer Association ...

[which] shall be empowered by the restrictive covenants running with the lots and by its own charter to enact reasonable rules and regulations implementing the conditions hereof...." The Decree also expressly grants the Association the power to "sue its constituent property owners to force compliance with the terms hereof." The Crystal Lakes Water and Sewer Association Amended Master Declaration (Master Declaration) [4] authorizes the Association to impose assessments [5] on the lot owners. These assessments provide the necessary revenue for activities of the Association, including payment of the expenses incurred in complying with the Decree—*e.g.*, operating and maintaining the three reservoirs used to store replacement water.

In the Decree, the water court set out conditions necessary to avoid adverse effects on existing water rights and decreed conditional water rights. The Decree provides that:

> The Court finds that by the imposition of the conditions set forth in these Findings, wells for household purposes, with no yard irrigation, and for municipal purposes ... may be constructed and utilized without adversely affecting any vested water rights or decreed conditional water rights on the Cache La Poudre River or its tributaries, and that by the institution of the combined plans for augmentation herein approved, the Applicant, or its successors or assigns, may secure permits for and use wells for [such purposes].

The conditions referred to include the following:

> [I]n applying to the State Engineer for permits to drill wells the following conditions [must be] satisfied: (1) [payment of the filing fee] ..., and (2) the owner of any land on which water from the well to be permitted will be used shall show proof that he has ratified any amendments to restrictive covenants attaching to his land or to the articles or by-laws of the Crystal Lakes Water and Sewer Association neces-

---

**4.** The Master Declaration was recorded in the office of the Larimer County clerk and recorder on October 3, 1975.

**5.** The complaint in this case refers to the assessments as membership dues.

sitated by conditions of this joint decree, and ratified the filing of this joint decree in the Larimer County records as a restrictive covenant to his land; such proof may consist of the date of purchase of said land if subsequent to the date of recording of this joint decree in the records of Larimer County.

The defendants are record title owners of lots in subdivision filings one through eight of the Crystal Lakes development.[6] The Association brought the present action against property owners of record in the Crystal Lakes development who had failed to ratify the Decree, and who had either obtained a well permit after the Decree was entered on December 7, 1978, or who had purchased their property after the Decree was recorded on January 12, 1979. The Association sent a demand letter to all similarly situated property owners in these two categories requiring them to ratify the Decree and pay assessments. Those who did not are the defendants in the present case.

The Association filed a complaint in which it asserted five claims for relief. First, the Association sought a declaratory judgment that the defendants who purchased their lots after recordation of the Decree on January 12, 1979, "are subject to all of the provisions of the said Decree and shall be considered to have ratified said Decree...." Second, the Association sought a declaratory judgment that the defendants who received well permits issued after entry of the Decree on December 7, 1978, "are subject to all of the provisions of the said Decree and shall be considered to have ratified the same...." Third, the Association sought a declaratory judgment that all defendants are liable to pay the membership dues assessed by the Association. Fourth, the Association re-

quested damages for membership dues in arrears plus interest. Fifth, the Association asked the court to determine that "the outstanding dues obligations are and constitute a lien against said real property [i.e., a lot owned by a person allegedly liable for membership dues would be subject to a lien to secure payment of such dues]...."

In the complaint, the Association also asserted that "[t]he District Court for Water Division No. 1 has jurisdiction of this matter because the issues presented depend upon the interpretation and enforcement of the Decree entered by this Court in Consolidated Case Nos. W–7631–74 and W–8540–77...." The Association alleged in the complaint that it brought this action "to determine that the Defendants, a small minority of the lot owners in the Crystal Lakes Subdivision[,] are ... subject to the provisions of the above mentioned Decree and the Crystal Lakes Master Declaration, as amended...."

A group of the defendants (referred to as "the Wolf defendants" because this group included the defendants Frederick F. Wolf and Julia Wolf) filed a motion to dismiss, alleging that the water court lacked subject matter jurisdiction to resolve the dispute.[7] The Wolf defendants asserted:

> The matters alleged by Plaintiff do not involve "water matters" but rather whether the Defendants are subject to the provisions of "Crystal Lakes Master Declaration." No challenge has been made by these Defendants as to the validity of the Plan of Augmentation. All named Defendants have an independent domestic water source through wells which are exempt from the jurisdiction of the State of Colorado and the Water Court.[8]

---

6. All of the lots owned by the defendants were platted prior to entry of the Decree. Not all of the defendants had constructed a well on their respective properties at the time this case was initiated.

7. The Wolf defendants consist of Frederick F. Wolf and Julia Wolf, Donald B. Montgomery and Faye M. Montgomery, Paul E. Kelly and Kathleen E. Kelly, Arnold E. Sanderson and Darlene H. Sanderson, Ralph N. Eberhardt and Doris P. Eberhardt, Albert L. Bludau and Gwinette D. Bludau, Fred J. Schrecengost, Jr. and Virginia K.

Schrecengost, and Robert K. Warner and Barbara D. Warner. When referring to arguments made to the water court relating to the motion to dismiss, our references to the "defendants" is limited to the Wolf defendants. On appeal, counsel for the defendants-appellees represent all the defendants-appellees, including the Wolf defendants.

8. As became clear at oral argument, certain of the defendants rely on well permits issued as exempt from administration pursuant to § 37–92–602, 15 C.R.S. (1990), to support their posi-

In an order dated March 21, 1994, the water court granted the Wolf defendants' motion and dismissed the Association's complaint.

In dismissing the Association's complaint, the water court held:

> Nothing in the pleadings suggests that Plaintiff's water rights, or the continued validity of its plan for augmentation, will be affected by the outcome of Plaintiff's claims. Rather, the issue is whether the decree and the Crystal Lakes Master Plan [sic] bind the Defendants. This determination involves the application of principals [sic] of contract and property law.

The water court articulated the issue before it as "whether the [Association's] claims constitute 'water matters' within the meaning of § 37–92–203." The water court concluded that none of the five claims for relief, as framed by the Association in its complaint, was within the jurisdiction of the water court. The Association filed a motion for reconsideration, which was denied, and then brought this appeal.

The Association asserts on appeal that the water court erred in holding that it lacked jurisdiction to resolve the present disputes. The Association contends that the defendants' refusal to ratify the Decree, acknowledge the obligatory nature of membership in the Association, and pay Association assessments impedes the Association's efforts to comply with the Decree's combined plans for augmentation, which in turn affects other water rights. Because the present dispute involves interpreting and enforcing decreed plans for augmentation, the Association asserts that this case involves the *use* of water, rather than the *ownership* of water rights, and thus falls under the exclusive jurisdiction of the water court. The Association contends that the central issue in this case is resolution of the scope of the combined plans for augmentation—which it argues is a water matter—while the issue of paying assessments is strictly secondary. The Association asserts that the water court also sits as a district court with general jurisdiction and has jurisdiction to resolve as ancillary the other claims for relief asserted by the Association that are not within the exclusive jurisdiction of the water court.

The defendants counter that the water court does not have jurisdiction to adjudicate issues that are tangentially related to a water matter because it is a court of limited jurisdiction and the Association presented no issue that falls within the exclusive jurisdiction of the water court. Furthermore, the defendants contend that this case is not properly before the water court because an action affecting an interest in real property must be tried in the county in which the real property is located.[9]

## II.

This case requires us to determine whether any of the five claims for relief presented in the Association's complaint are "water matters" and therefore fall within the exclusive jurisdiction of the water court. In dismissing the Association's complaint, the water court held that none of the five claims for relief constituted a water matter. For the reasons stated below, we disagree.

tion that they are not subject to the plans for augmentation. The Association contends that the State Engineer's office erroneously issued "exempt" well permits under § 37–92–602 after the recordation of the Decree in case W–8540–77. In a letter dated April 2, 1990, the State Engineer stated that his office had issued forty well permits for the first seven Crystal Lakes Subdivision filings. Of these forty well permits, thirteen were issued pursuant to the plan for augmentation in the Decree, while twenty-seven permits were issued as exempt wells pursuant to § 37–92–602. According to the State Engineer, "[t]his split in the manner in which well permits were issued during this period was due to two factors: (1) the previously mentioned ambiguities in decrees W–7631–74 and W–8540–77, and (2)

past representations by the ... Association that the lot owners in the first seven subdivision filings could have new wells permitted under either the augmentation plan [in the Decree] *OR* under the exempt well provisions of Section 37–92–602." This letter, although helpful in understanding the exempt well issue, plays no part in our analysis or resolution of the issues in this case. *See infra* note 12.

9. In the present case, the property is located in Larimer County, whereas the water court normally conducts its proceedings in Weld County, where the office of the water clerk for division 1 is located. *See* §§ 37–92–203(3), –204(1)(b), 15 C.R.S. (1990); *see also infra* part IV.

### A.

■ The motion to dismiss for lack of jurisdiction over the subject matter is within the purview of C.R.C.P. 12(b)(1). When considering such a motion, the trial court must accept the allegations of the plaintiff's complaint as true and construe them strictly against the defendant. *See, e.g., Popovich v. Irlando*, 811 P.2d 379, 385 (Colo.1991).

### B.

■ The position of water judge and the water court's jurisdiction are statutorily prescribed in section 37–92–203, which provides in pertinent part:

There is established in each water division the position of water judge of the district courts of all counties situated entirely or partly within the division. Said district courts collectively acting through the water judge have exclusive jurisdiction of water matters within the division, and no judge other than the one designated as a water judge shall act with respect to water matters in that division. Water matters shall include only those matters which this article and any other law shall specify to be heard by the water judge of the district courts.

§ 37–92–203(1), 15 C.R.S. (1990). We have recognized that "an action for determination of a water right or a change of water right, each of which concerns the right to use of water, is a water matter within the exclusive jurisdiction of the water judge." *Bijou Irrigation Dist. v. Empire Club*, 804 P.2d 175, 180 (Colo.) (citing *Humphrey v. Southwestern Dev. Co.*, 734 P.2d 637, 640–41 (Colo. 1987)), *cert. denied*, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 104 (1991). Conversely, an action to determine ownership of a water right falls within the general jurisdiction of the district courts of this state. *Id.* (citing *Humphrey*, 734 P.2d at 641). Therefore, "[r]esolution of what constitutes a water matter turns on the distinction between the legal right to *use* of water (acquired by appropria-

tion), and the *ownership* of a water right." *Humphrey*, 734 P.2d at 640 (emphasis in original).

■ In the present case, the Association sought a declaratory judgment that the defendants are subject to the terms of the Decree, including the combined plans for augmentation.[10] A plan for augmentation is statutorily defined as:

[A] detailed program to increase the supply of water available for beneficial use in a division or portion thereof by the development of new or alternate means or points of diversion, by a pooling of water resources, by water exchange projects, by providing substitute supplies of water, by the development of new sources of water, or by any other appropriate means.

§ 37–92–103(9), 15 C.R.S. (1990). As the statute indicates, a plan for augmentation is simply a program to increase the supply of water available for beneficial use. In seeking a declaratory judgment that the defendants are subject to the terms of the Decree, the Association was asking the court to determine the scope of the combined plans for augmentation, thereby affecting rights to use of water rather than ownership of water rights. The rights to use of water affected by the declaratory judgment sought by the Association include the rights of: (1) the Association and its members; (2) downstream users with senior water rights; and (3) the defendants. We address in turn the effects of the proposed declaratory judgment on these three sets of rights.

First, the rights of the Association and its members to divert and use water through the wells in the Crystal Lakes development are conditioned by the Decree upon providing adequate replacement water pursuant to the combined plans for augmentation. The Decree recognizes that "[u]nder ordinary circumstances, without a plan for augmentation, no water could be diverted through the proposed wells because vested water rights and decreed conditional water rights would be

---

10. More precisely, the Association's first claim for relief sought a declaratory judgment that the terms of the Decree apply to those defendants who purchased their lots after the Decree was recorded on January 12, 1979, and the second claim for relief sought a declaratory judgment that the terms of the Decree also apply to those defendants who received well permits issued after the Decree was entered on December 7, 1978.

injured by the depletions to the stream caused by this small amount of consumptive use." "As a result [of the combined plans for augmentation, however], the underground water to be diverted by the development wells, which would otherwise be considered as appropriated and unavailable for use, will now be available for use without adversely affecting vested water rights or decreed conditional water rights on the South Platte or its tributaries." Under the combined plans for augmentation, the Association is responsible for providing adequate replacement water when necessary to satisfy the demands of senior rights. The amount of replacement water required is based upon factors set forth in the plans for augmentation, including the number of single-family equivalent units built in the Crystal Lakes development and the types of sewage disposal systems serving those units. To fulfill this replacement obligation, the Association must ascertain whether the defendants are subject to the plan for augmentation in order to calculate the amount of replacement water required under the Decree. Moreover, if the Association is unable to provide the necessary amount of replacement water, the use of water in the Crystal Lakes development must be rationed.

Second, the right to use of water by downstream users with senior water rights is also affected by the Association's ability to provide adequate replacement water. Specifically, if the defendants' wells are not subject to the plans for augmentation, they would not be factored into the formula for determining the amount of replacement water to be provided by the Association. This would result in a reduction in the stream flow and may cause harm to downstream appropriators with senior water rights.

Third, the rights of the defendants to use water would be directly affected by the water court's determination as to whether their wells are exempt from administration,[11] as their permits indicate, or are subject to the plans for augmentation. If, as the Associa-

tion contends, such wells are not exempt notwithstanding the terms of their permits, and are subject to the plans for augmentation, the defendants' rights to divert and use water would be conditioned on compliance with those plans, including the requirement that replacement water be made available to prevent injury to senior rights.

■ Moreover, the legislature has recognized that wells in a land development project may have a cumulative adverse effect on the rights of senior downstream users. *See* § 37–92–602(3)(b)(III), 15 C.R.S. (1990). Thus, although a well validly permitted under the exemption provisions of section 37–92–602, 15 C.R.S. (1990 & 1995 Supp.), standing alone, is free from administration, *all* wells involved in a plan for augmentation must be treated as if they were non-exempt. *Kelly Ranch v. Southeastern Colo. Water Conservancy Dist.*, 191 Colo. 65, 76, 550 P.2d 297, 305 (1976); *Cache La Poudre Water Users Ass'n v. Glacier View Meadows*, 191 Colo. 53, 59, 550 P.2d 288, 292 (1976). The legislature has also expressed concern that exempt wells may cause injury to downstream users. § 37–92–602(6), 15 C.R.S. (1990) ("It is hereby declared to be the policy of the state of Colorado that the [well] exemptions set forth in this section are intended to allow citizens to obtain a water supply in less densely populated areas for in-house and domestic animal uses where other water supplies are not available. It is not the intent that these wells be used to cause material injury to prior vested water rights, and, wherever possible, persons seeking the use of such individual wells may be required to develop plans for augmentation pursuant to section 37–92–302 or to develop other replacement plans acceptable to the state engineer."). Therefore, the defendants may be subject to the terms of the combined plans for augmentation in the Decree even if the water court determines that some of the defendants do have valid exempt well permits. Resolution of these issues involves the

---

11. Under § 37–92–602, 15 C.R.S. (1990 & 1995 Supp.), permits for proposed wells meeting specified criteria concerning rate of flow and purposes of use can be issued by the state engineer provided that the vested water rights of others or any other existing well will not be materially injured. Such wells are exempt from administration and can be operated without providing replacement water.

right to use of water and therefore is subject to water court jurisdiction as a "water matter." *See* § 37–92–203(1).

### C.

The defendants conceded in oral argument in this court that if the Association had pleaded in the complaint that the defendants were not exempt from the terms of the combined plans for augmentation in the Decree, a water matter would be at issue and under the exclusive jurisdiction of the water court. The defendants assert that the Association's request for a declaratory judgment that the defendants are subject to the provisions of the Decree does not constitute a water matter. We find the defendants' contention— which attempts to differentiate between a claim that the defendants are not exempt from administration and a claim that the defendants are subject to the terms of the Decree—to be unpersuasive and based only on semantic differences.

The Association requested the water court to determine that the defendants are subject to the terms of the Decree. The combined plans for augmentation in the decree specifically state that "[w]ells constructed under this joint decree are subject to administration and are not exempt from administration pursuant to [section 37–92–602, the exempt well statute]." By requesting the court to enter a declaratory judgment that the defendants are subject to the terms of the Decree, the Association, in effect, requested the court to determine that the defendants could not operate or obtain wells free from the provisions of the plans for augmentation. Moreover, the Wolf defendants expressly claimed in their motion to dismiss for lack of jurisdiction that their wells were "exempt from the jurisdiction of the State of Colorado and the Water Court." Thus, both the Association's complaint and the Wolf defendants' motion to dismiss raised the issue of whether the defendants may operate wells exempt from administration and not subject to the plans for augmentation. Resolution of these issues falls within the exclusive jurisdiction of the water court.

### D.

The water court is the proper forum to define the scope of plans for augmentation that it previously decreed. The specialized expertise of the water court is essential in determining whether wells are subject to a plan for augmentation. Only a water court can issue a decree approving a plan for augmentation. §§ 37–92–203(1), –302(1), 15 C.R.S. (1990). The legislature has recognized the complex nature of a plan for augmentation and the necessity of allowing the water court to adjust such a plan upon reconsideration. *See* § 37–92–304(6), 15 C.R.S. (1990) (granting the water court retained jurisdiction to reconsider approval of a plan for augmentation). Although the period for retained jurisdiction has expired in the present case, the legislatively created procedure allowing a water court to retain jurisdiction over a plan for augmentation supports our conclusion that the water court has jurisdiction and is the appropriate forum in which to seek an interpretation of the scope of the combined plans for augmentation approved in the Decree entered by that same court.

For the foregoing reasons, we hold that the first two claims for relief set out in the Association's complaint involve water matters and are within the water court's exclusive jurisdiction.[12]

### III.

■ Having concluded that the first two claims for declaratory judgment set out in the Association's complaint fall within the exclusive jurisdiction of the water court, we next must determine whether the water court has jurisdiction to resolve any of the remaining three claims.[13] Because the water

---

**12.** Because we hold that the Association's complaint, along with the Decree and responsive pleadings, adequately raise issues that constitute water matters, we need not address the defendants' contention that this court should not consider evidence placed in the record after the water court entered its order dismissing the complaint.

**13.** The three other claims for relief set forth in the Association's complaint are as follows: (1) the Association sought a declaratory judgment that all defendants are liable to pay the member-

court held that none of the Association's claims for relief constituted a water matter within its exclusive jurisdiction, the water court did not reach the issue of jurisdiction over ancillary matters. As discussed below, we hold that the water court may resolve ancillary issues presented in this case that are not water matters because resolution of those ancillary issues would directly affect the outcome of water matters within the exclusive jurisdiction of the water court.

We have recognized that "[t]he jurisdiction of the water judge is not limited solely to 'water matters,' but his jurisdiction extends to other matters 'implied in the constitution and the [water right determination and administration] statute. Colo. Const. art. VI, § 9(1).' " *Oliver v. District Court In and For Boulder County,* 190 Colo. 524, 526, 549 P.2d 770, 771 (1976) (quoting *Perdue v. Fort Lyon Canal Co.,* 184 Colo. 219, 223, 519 P.2d 954, 956 (1974)). In addition to having exclusive jurisdiction over water matters, a water court is also a district court with general jurisdiction. *See, e.g., Humphrey,* 734 P.2d at 641 ("We acknowledge that in some cases water judges have been permitted to exercise 'jurisdiction over private agreements which may affect [water right] priorities' because the water judge 'wears two hats,' as both a district judge and a water judge.") (citing *Perdue,* 184 Colo. at 222–23, 519 P.2d at 956). Although the water court has jurisdiction over issues ancillary to water matters, that court does not have jurisdiction over real property issues only tangentially related to a water matter. *FWS Land & Cattle Co. v. Colo. Div. of Wildlife,* 795 P.2d 837, 841 (Colo.1990); *see Bijou Irrigation,* 804 P.2d at 180.

In the present case, we have determined that the water court has exclusive jurisdiction over the first two claims for relief set out in the Association's complaint. If the remaining three claims for relief were to be heard in a different court, the resolution of those claims would directly affect the outcome of the case pending in water court.

Specifically, in ruling on whether the defendants are liable to the Association for membership dues, the district court would, in effect, be ruling on whether the defendants are subject to the terms of the Master Declaration and the combined plans for augmentation. Therefore, the water court has jurisdiction to resolve the ancillary claims because the resolution of the claims in the Association's complaint that are not within the exclusive jurisdiction of the water court would directly affect the disposition of issues in the same case involving water matters pending in the water court.

This conclusion is consistent with our prior holdings that water court jurisdiction extends to private agreements that affect the use of water rights. *Oliver,* 190 Colo. at 527, 549 P.2d at 771–72; *Perdue,* 184 Colo. at 222–23, 519 P.2d at 956. In the present case, the Master Declaration provides the mechanism by which individual lot owners satisfy the terms of the combined plans for augmentation—specifically, they pay dues to the Association which in turn operates the reservoirs used to provide replacement water. The Association's ability to provide replacement water, as required under the combined plans for augmentation, is directly affected by payment of dues by the lot owners. Thus, determining whether the defendants are obligated to pay membership dues to the Association directly affects the rights to use of water by the Association as well as its members.

Judicial economy also supports our conclusion that the water court has jurisdiction to resolve the ancillary issues raised in this case that are not water matters. As a general rule, "[o]nce a court takes jurisdiction of an action, it thereafter has exclusive jurisdiction of the subjects and matters ancillary thereto." *People in Interest of Maddox v. District Court In and For Arapahoe County,* 198 Colo. 208, 211, 597 P.2d 573, 575 (1979) (citations omitted). "When the water judge wears two hats, it would approach an absurdity to say that he must rule in two different actions to bring about [a just and

ship dues assessed by the Association; (2) the Association requested damages for membership dues in arrears plus interest; and (3) the Association asked the court to determine that "the out-

standing dues obligations are and constitute a lien against said real property," *i.e.,* the individual lots on the basis of which the dues were assessed.

final] result." *Perdue*, 184 Colo. at 223, 519 P.2d at 956. We conclude, therefore, that the water court has jurisdiction to resolve ancillary matters raised in the Association's complaint because the water court has exclusive jurisdiction to determine the scope of the plans for augmentation, and the resolution of these ancillary matters would directly affect the outcome of the issues concerning the scope of the plans for augmentation.

## IV.

■ Finally, we address the defendants' assertion that this is an action affecting real property and therefore venue lies in Larimer County, where the real property is situated. See C.R.C.P. 98(a), which states that "[a]ll actions affecting real property . . . shall be tried in the county in which the subject of the action, or a substantial part thereof, is situated." Under C.R.C.P. 98(a), the defendants contend, only the Larimer County district court can hear this action. This argument is simply a variation of the defendants' contention that the claims set forth in the Association's complaint involve issues of property and contract law and not water matters and therefore are not within the exclusive jurisdiction of the water court. We have rejected that contention and have determined that the first two claims set forth in the complaint do involve water matters and that the other three can properly be resolved by the water court as ancillary to the first two claims. As a result, the water court has exclusive jurisdiction, the locations where the water court may sit are governed by statute,[14] and the venue provisions of C.R.C.P. 98(a) do not apply.

## V.

We conclude that the water court has exclusive jurisdiction over the first two claims for relief, as set out in the Association's complaint, requesting a declaratory judgment that certain defendants are subject to the terms of the Decree, which includes the combined plans for augmentation. We further conclude that the water court has jurisdiction over the remaining ancillary issues because resolution of those ancillary issues would directly affect the outcome of the primary issue as to the scope of the combined plans for augmentation, which is within the exclusive jurisdiction of the water court. Accordingly, we reverse the judgment of the water court and remand the case to that court for further proceedings consistent with this opinion.

14. The division 1 water court normally sits in Weld County, where the water clerk is located, but under appropriate circumstances may sit in other counties. *See* §§ 37–92–203(3), –304(4), 15 C.R.S. (1990). The defendants, however, are not asserting that the water court should hear this case in Larimer County; their position is that the water court lacks jurisdiction wherever it may choose to sit.