**Ralph L. ARCHULETA,**
**Plaintiff–Appellant,**

v.

**Theodore GOMEZ, Defendant–Appellee.**

No. 04CA2231.

Colorado Court of Appeals,
Div. II.

May 4, 2006.

Max I. Exline, Pueblo, Colorado, for Plaintiff–Appellant.

MacDougall, Woldridge & Worley, P.C., Henry D. Worley, Colorado Springs, Colorado, for Defendant–Appellee.

CARPARELLI, J.

Plaintiff, Ralph L. Archuleta, appeals the district court's judgment dismissing his complaint to enjoin defendant, Theodore Gomez, from interfering with his water rights and for damages resulting from interference with those rights. Archuleta also appeals the district court's ruling that Gomez adversely possessed those water rights. We conclude that this dispute in part addresses the right to use water and to that extent it is within the exclusive jurisdiction of the water court. We affirm that portion of the judgment regarding Archuleta's claim for damages resulting from flooding and vacate the judgment in all other regards.

Archuleta and Gomez are record owners of fractional shares of water rights related to Manzanares Ditch No. 1, Manzanares Ditch No. 2, and Archuleta Ditch, which are on or adjacent to their properties in Huerfano County. Other fractional owners were not parties to the litigation. Neither party disputes the record ownership or the chain of title of the water rights.

## I. Proceedings

Archuleta's complaint alleged that Gomez (1) had used more than the amount of water granted to him and, thereby, prevented water from reaching Archuleta's property; (2) had interfered with operation of headgates and improperly prevented water from flowing to Archuleta's land; (3) had filled in one of the ditches and, thereby, prevented water from flowing to Archuleta's land; and (4) had negligently flooded his own land with diverted water, stored it, and allowed it to flood Archuleta's land. Archuleta sought to enjoin Gomez from interfering with his water rights and to recover damages resulting from Gomez's diversion of his water, damages for the cost of repairing and replacing headgates, and exemplary damages.

In his answer, Gomez denied interfering with Archuleta's water and ditch rights and asserted defenses of laches, waiver, statute of limitations, and contributory negligence. Al-though Gomez was granted leave to file a counterclaim for adverse possession, he did not do so. However, Gomez later asked for partial summary judgment stating that Archuleta's claims regarding the Archuleta Ditch and related water rights were barred by the statute of limitations and that he, Gomez, adversely possessed those rights. The trial court denied Gomez's motion.

The trial management order stated that Gomez raised defenses of laches, waiver, statute of limitations, and contributory negligence and that he made no counterclaims.

After trial, the court concluded that Archuleta's claims regarding the Archuleta Ditch, Priority No. 30, were time barred and that, notwithstanding Archuleta's record interest in the Archuleta Ditch, Gomez used the water from the Archuleta Ditch and acquired Archuleta's rights by adverse possession. The court also concluded that Gomez's adverse possession barred Archuleta's claims for damages.

With regard to the Manzanares Ditch No. 1, Priority No. 26, the court concluded, among other things, that any damage was de minimis, that Archuleta failed to sustain his burden, and that his claim for damages was time barred.

As to the Manzanares Ditch No. 2, Priority No. 31, the court held, in the alternative, that Archuleta failed to prove damages or that his claims were time barred. It also held that Gomez and his predecessors had adversely possessed Archuleta's water rights to the exclusion of Archuleta and that the adverse possession barred Archuleta's damages claims.

Accordingly, the trial court dismissed Archuleta's claims with prejudice.

## II. Jurisdiction

Although neither party questioned the jurisdiction of the district court or the jurisdiction of this court to hear this appeal, jurisdiction is an issue that we may raise and resolve sua sponte. *People v. Severin,* 122 P.3d 1073 (Colo.App.2005); *see also Keith v. Kinney,* 961 P.2d 516 (Colo.App.1997). Accordingly, we ordered the parties to submit

supplemental briefs on the question of whether the water court has exclusive jurisdiction over this dispute.

Although Archuleta's suit sought to enforce his previously decreed water rights, Gomez's adverse possession defense asked the court to terminate Archuleta's rights and grant Gomez the right to use the water. We conclude that this issue is within the exclusive jurisdiction of the water court. In addition, although Gomez's defense of adverse possession of the ditches was within the jurisdiction of the district court, it was ancillary to the dispute regarding the use of the water and, thus, was an issue that could properly be resolved by the water court. Consequently, we conclude that the district court was without jurisdiction to terminate Archuleta's decreed water rights and to grant Archuleta's rights to Gomez, and that the court erred when it exercised its jurisdiction regarding the ditches in conjunction with the water rights dispute.

### A. Court of Appeals

■ We have "initial jurisdiction over appeals from final judgments of the district courts." Section 13–4–102(1), C.R.S.2005. However, we do not have jurisdiction over "[w]ater cases involving priorities or adjudications." Section 13–4–102(1)(d), C.R.S.2005; *City of Sterling v. Sterling Irrigation Co.*, 42 P.3d 72 (Colo.App.2002). Nonetheless, because the district court entered a final judgment in this matter, we have jurisdiction to review that judgment.

### B. Water Court

■ A water right is the right to use water in accordance with its priority by reason of the appropriation of that water. Section 37–92–103(12), C.R.S.2005. The right to use water is governed by the doctrine of prior appropriation. The basic principle is that the one who first places the water to beneficial use has the first priority to use of the water, or, first in time, first in right. *Coffin v. Left Hand Ditch Co.*, 6 Colo. 443 (1882).

Appropriation is the "application of a specified portion of the waters of the state to a beneficial use." Section 37–92–103(3)(a), C.R.S.2005.

■ A water court's adjudication quantifies an existing beneficial use of water and establishes a priority date for the water right. A water court's decree of water rights confirms pre-existing beneficial uses and serves as evidence of them. *Humphrey v. Sw. Dev. Co.*, 734 P.2d 637 (Colo.1987).

■ Water courts have exclusive subject matter jurisdiction over "water matters." Section 37–92–203(1), C.R.S.2005. A water matter includes any determination regarding the right to use water, such as the quantification of a water right or a change in a previously decreed water right. *Crystal Lakes Water & Sewer Ass'n v. Backlund*, 908 P.2d 534 (Colo.1996). Actions to determine the legal right to use water are water matters within the exclusive jurisdiction of the water courts. *Humphrey v. Sw. Dev. Co., supra.* See generally John Thorson et al., *Dividing Western Waters: A Century of Adjudicating Rivers & Streams*, 8 U. Denv. Water L.Rev. 355 (2005) (providing a comprehensive explanation and overview of the adjudication of the legal right to use water in Colorado and the western states).

■ However, once a water right has been decreed, that right is treated like a property right, and its ownership may be transferred like other real estate. *Humphrey v. Sw. Dev. Co., supra* (citing *Cline v. Whitten*, 144 Colo. 126, 355 P.2d 306 (1960)).

■ Determining what constitutes a water matter "turns on the distinction between the legal right to *use* of water (acquired by appropriation), and the *ownership* of a water right." *Crystal Lakes Water & Sewer Ass'n v. Backlund, supra*, 908 P.2d at 540 (quoting *Humphrey v. Sw. Dev. Co., supra*, 734 P.2d at 640). The water court also has jurisdiction over ancillary issues that directly impact water rights, such as private contractual agreements affecting the use of water rights. *Crystal Lakes Water & Sewer Ass'n v. Backlund, supra; see also City of Sterling v. Sterling Irrigation Co., supra* (concluding that if the construction of a private contractual agreement is necessary for a water right adjudication, then the water court retains

ancillary jurisdiction over the contractual issue). However, a water court does not have jurisdiction "over real property issues only tangentially related to a water matter." *Crystal Lakes Water & Sewer Ass'n v. Backlund, supra,* 908 P.2d at 543 (citing *FWS Land & Cattle Co. v. State,* 795 P.2d 837, 841 (Colo.1990)).

▪ In addition, "[t]he substance of the relief sought, rather than the form of the pleading, determines whether a particular action is a water matter." *City of Sterling v. Sterling Irrigation Co., supra,* 42 P.3d at 74.

▪ Because the water court does not have exclusive jurisdiction to determine the *ownership* of a water right after it has been decreed, district courts may resolve such issues. *Crystal Lakes Water & Sewer Ass'n v. Backlund, supra.* For example, district courts may properly determine the ownership of previously decreed water rights in contexts such as the interpretation of deeds, chains of title, quiet title proceedings, real estate transfers, dissolution proceedings, and foreclosures. *Humphrey v. Sw. Dev. Co., supra; Navajo Dev. Co. v. Sanderson,* 655 P.2d 1374 (Colo.1982) (conveyance of water rights by warranty deed); *Atchison v. City of Englewood,* 193 Colo. 367, 568 P.2d 13 (1977)(conveyance of a ranch and water rights); *Raber v. Lohr,* 163 Colo. 485, 431 P.2d 770 (1967)(attempted conveyance by quitclaim deed); *Gilpin Inv. Co. v. Perigo Mines Co.,* 161 Colo. 252, 421 P.2d 477 (1966) (determination of chain of title in a quiet title action); *Thompson v. Blanchard,* 116 Colo. 27, 178 P.2d 422 (1947)(chain of title establishing ownership); *Farmer v. Farmer,* 720 P.2d 174 (Colo.App.1986)(quiet title action between husband and wife cotenants); *Travelers Ins. Co. v. Janitell Farms, Inc.,* 44 Colo.App. 34, 609 P.2d 1116 (1980)(real estate foreclosure).

In the following sections of this opinion, we apply these principles to conclude that the district court lacked jurisdiction for all but one of Archuleta's claims.

### III. Negligent Irrigation

▪ We conclude that the district court had jurisdiction to consider Archuleta's negligence, trespass, and nuisance claims.

Archuleta's claim for damages caused by allegedly negligent irrigation is not related to the ownership of the disputed water rights. Because it is not an ancillary issue that directly impacts the water rights, the district court had jurisdiction.

The district court stated that Archuleta's damages were vague and were not based on loss of net profits or lost market value. It also noted that Archuleta could not be sure when any flooding occurred. The court concluded that Archuleta failed to sustain his burden of proof as to negligence, trespass, nuisance, or any actions by Gomez that caused him actual damage.

▪ The trier of fact, and not the appellate court, must determine all issues relative to the sufficiency, credibility, and weight of the evidence. *See Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62 (Colo.App.1985). Consequently, we reverse the trial court's findings of fact only when they are so clearly erroneous as to find no support in the record. *Citizens Progressive Alliance v. Sw. Water Conservation Dist.,* 97 P.3d 308, 314 (Colo. App.2004).

Archuleta's argument is premised on the sufficiency, credibility, and weight of the evidence. Having reviewed the record, we perceive no basis to conclude that the district court's findings were clearly erroneous. Therefore, we will not disturb the court's findings and verdict on this claim. Having so ruled, we need not address the court's alternative ruling regarding the statute of limitations.

### IV. Disputed Water Rights

▪ The district court concluded that, although Archuleta was the record owner of a fractional share of Archuleta Ditch, Priority No. 30, Gomez had used the water and, as a result, was now entitled to Archuleta's share of the priority. We conclude that the district court lacked jurisdiction to make this determination.

### A. Adverse Possession of Water Rights

In *In re Water Rights of V–Heart Ranch, Inc.,* 690 P.2d 1271 (Colo.1984), the water

court granted an application for a change of water right from one party to another who claimed adverse possession. Although the supreme court reversed, the court stated that water rights may be terminated by adverse possession. *V–Heart Ranch, supra.*

In *Farmer v. Farmer, supra,* 720 P.2d at 176, the plaintiff brought a quiet title action in district court, claiming cotenancy of real property and adverse possession of water rights underlying the property. The plaintiff's water rights claim was premised on her cotenancy in the parcel. The district court quieted title in the plaintiff regarding the ownership of the land, but rejected her adverse possession claim regarding the water rights. Although the *Farmer* division cited *V–Heart Ranch* and stated that ownership of water rights may be deemed ownership of real property for purposes of adverse possession, it affirmed the district court's rejection of the plaintiff's claim because "[o]ne's right to water is determined by priority of appropriation which is based on a beneficial use of the water; it is not based on ownership of the surface." *Farmer v. Farmer, supra,* 720 P.2d at 177.

Like the division in *Farmer,* we conclude that *V–Heart Ranch* established that water rights may be adversely possessed and that the party claiming adverse possession must establish that "possession of the claimed [water right] was actual, adverse, hostile, and under claim of right, as well as open, notorious, exclusive, and continuous for the statutory period." *Farmer v. Farmer, supra,* 720 P.2d at 176; *see* § 38–41–101(1), C.R.S.2005; *Gerner v. Sullivan,* 768 P.2d 701 (Colo.1989); *V–Heart Ranch, supra,* 690 P.2d at 1273.

Because the plaintiff in *V–Heart Ranch* brought its claim by application to the water court, it is clear that the water court has jurisdiction to entertain a claim of adverse possession of water rights. However, the district court's jurisdiction to consider such claims is not clear. In *Farmer,* the district court did not terminate the defendant's water rights or transfer them to the plaintiff, and the division's ruling did not address the question of whether the district court would have had jurisdiction to do so. Therefore, the

decision in *Farmer* is not dispositive of the question of district court jurisdiction.

### B. Modification of Water Rights

Here, based on property law, the district court granted water rights to Gomez. Had the matter been decided in the water court, however, water law principles would have been applied to the termination of Archuleta's rights and the award of the rights to Gomez. Considering these principles and comparing them to the law regarding adverse possession, we conclude that the district court's decision affected the right to use water based on appropriation and beneficial use, not on ownership of property.

### 1. Abandonment of Water Rights

The water court has exclusive jurisdiction to determine abandonment of water rights. *Gardner v. State,* 200 Colo. 221, 614 P.2d 357 (1980).

Here, the water court would have exclusive jurisdiction to determine whether Archuleta abandoned his water rights. To do so, it would consider whether he intended to give up the rights and permanently relinquish or discontinue their use. *See* § 37–92–103(2), C.R.S.2005. If the water court concluded that Archuleta had abandoned his water rights, the water originally decreed would then belong to the stream and be subject to appropriation by others. *Se. Colo. Water Conservancy Dist. v. Twin Lakes Assocs., Inc.,* 770 P.2d 1231, 1238 (Colo.1989). If Archuleta later attempted a new appropriation, the priority of the new water right would not be based on the previous priority date, but, rather, on the date of the new appropriation. *Farmers Reservoir & Irrigation Co. v. Fulton Irrigating Ditch Co.,* 108 Colo. 482, 120 P.2d 196 (1941).

### 2. Forfeiture of Water Rights

The water court could consider whether Archuleta was equitably estopped from enforcing his rights. To do so, it would consider whether he falsely represented or concealed material facts, or endeavored to convey an impression of facts contrary to those asserted in his enforcement action. The court would also consider whether Ar-

chuleta (1) intended or expected that Gomez would act on the basis of his misleading conduct and (2) knew or had actual or constructive knowledge of the true facts. *Jacobs v. Perry*, 135 Colo. 550, 313 P.2d 1008 (1957).

In addition, Gomez would be required to show that he (1) lacked knowledge and the means of knowledge of the true facts; (2) relied upon Archuleta's conduct; and (3) detrimentally changed his position based on Archuleta's conduct. *See Jacobs v. Perry, supra.*

Thus, in the context of water rights, because the effect of an estoppel would be to forfeit Archuleta's water rights and transfer them to Gomez, there must be some degree of turpitude in Archuleta's conduct. *Lower Latham Ditch Co. v. Louden Irrigating Canal Co.*, 27 Colo. 267, 60 P. 629 (1900).

### 3. Obtaining Water Rights by Prescription

Although Gomez might have a basis to terminate Archuleta's water rights by prescription based on open and notorious use of water without Archuleta's protest, the water court would take care to ensure that such appropriation would not circumvent the letter and spirit of the water statutes and prejudice the previously decreed priorities of others. *German Ditch & Reservoir Co. v. Platte Valley Irrigating Co.*, 67 Colo. 390, 178 P. 896 (1919) (holding that the adjudication statutes and the doctrine of prior appropriation govern terminating a water right by prescription).

### C. Conclusions

We conclude that the termination and award of water rights is within the exclusive jurisdiction of the water courts. Therefore, when the owner of a water right endeavors to enforce that right in the district court, and the defendant asserts that the owner has abandoned the water right, or should be estopped from enforcing it, or that the water right should be granted to the defendant based on the defendant's adverse possession, the case involves both the enforcement of a water right and an assertion that the right to use the water should be terminated and awarded to another based on beneficial use

of the water. As a result, the case is within the exclusive jurisdiction of the water court. *See V–Heart Ranch, supra; Lomas v. Webster*, 109 Colo. 107, 122 P.2d 248 (1942) (applying water law statutes to an adverse possession claim). Even though property law statutes govern the adverse possession of water rights, the water court may properly apply those statutes when the dispute centers on the legal right to use water. *See Humphrey v. Sw. Dev. Co., supra.*

Consequently, we conclude the district court lacked jurisdiction to terminate Archuleta's water rights and to award them to Gomez. Therefore, we vacate the court's conclusion that by adverse possession, Gomez acquired Archuleta's water rights associated with the Archuleta Ditch, Priority No. 30, and the Manzanares Ditch No. 2, Priority No. 31.

### V. Irrigation Ditches

▬▬ In addition, we conclude that the disputes over Archuleta's ownership interests in the Archuleta Ditch and the Manzanares Ditch No. 2 turn on the resolution of Gomez's adverse possession claims and are thus ancillary to the use of his associated water rights. Therefore, this ancillary issue is within the exclusive jurisdiction of the water court. Because we cannot discern the extent to which the district court's conclusion that Archuleta failed to prove damages is premised on its conclusion that Gomez and his predecessors adversely possessed Archuleta's water rights associated with Manzanares Ditch No. 2, Priority 31, we also vacate that conclusion.

Finally, because the district court was without jurisdiction to terminate Archuleta's water rights, we vacate its finding that his use of water from the Manzanares Ditch No. 1, Priority 26, was "too little too late," and constituted an abandonment of his water right. We also vacate the court's finding that Archuleta's failure to participate in the rotation agreement or to pay for ditch repairs affected his water right.

The judgment is affirmed with regard to Archuleta's claim for damages resulting from

flooding, and it is vacated in all other regards.

Judge ROTHENBERG and Judge GRAHAM concur.