CAMBRIDGE VILLAGE CONDOMINIUM ASSOCIATION,
Appellant and Cross–Appellee,

v.

CAMBRIDGE CONDOMINIUM ASSOCIATION, Appellee and Cross–Appellant.

[Cite as *Cambridge Village Condominium Assn. v. Cambridge
Condominium Assn.* (2000), 139 Ohio App.3d 328.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 99–L–100.

Decided Oct. 2, 2000.

James M. Lyons, for appellant and cross-appellee.

Gerald J. Patronite, for appellee and cross-appellant.

NADER, Judge.

Appellant, Cambridge Village Condominium Association ("Cambridge Village"), appeals from the judgment of the Lake County Court of Common Pleas, granting partial summary judgment in favor of appellee, Cambridge Condominium Association ("Cambridge").

This appeal involves a dispute between the Cambridge Village Condominium Association and the Cambridge Condominium Association, which govern properties that occupy adjoining tracts of land in Painesville Township, Ohio, concerning the payment of maintenance costs for recreational facilities that are a part of the Cambridge Village Condominium complex.

The condominium units comprising Cambridge Village and Cambridge were both developed by Community Development Services, Inc. ("Community"). On November 19, 1971, in the deed records of Lake County, Community filed a "Declaration of Condominium Ownership and By–Laws of Unit Owners' Association," creating the Cambridge Condominium Association. The declaration included the following provisions regarding recreational facilities:

### "Article VI—Perpetual License to Owners of Family Units

"Community ('Community'), adjacent to the Community Property, upon land owned by it, has constructed certain Recreational Facilities, consisting of a Swimming Pool, a Community Building and Tennis Courts.

"Each owner of a Family Unit, for the use of himself and his immediate family, or the tenant of such owner and the tenant's immediate family, plus occasional guests as may be permitted under regulations established by Community or its successor in interest, for the use of such recreational facilities, shall have a perpetual non-exclusive license, so long as he is not in default of any obligations of an owner of a Family Unit as provided in this Declaration of Condominium, or in the By–Laws of the Unit Owners Association, to use such Recreational Facilities, subject, however, to such regulations for such use as may be from time to time established in its sole discretion by Community or its successors in interest. A share of the cost of the maintenance of such Recreational Facilities, as elsewhere provided for in this Declaration, shall be an obligation of each Family Unit, whether or not the owner shall utilize the license herein granted.

### "Article X—Assessments

### "B. Common Expenses

"The Common Expenses for which the owner of a Family Unit shall bear his proportionate share shall include[:] * * *

"(b) the expense of maintaining, protecting, insuring, and repairing the real property over which the owners of the Family Units enjoy the use as provided in Article VI hereof, including the maintaining, protecting, insurance, and repair or replacement of the personal property used at any time to complement the use of the said licensed real property.

"It is understood that the foregoing expenses include in all instances a reasonable allowance for overhead and reasonable compensation to the person or corporation performing the service, not excepting such allowance and compensation to Community under its contract for the maintenance, protection, insurance and repair of the Common Areas and Facilities, as provided for in Article VII(D) above, and a similar reasonable allowance and compensation to Community with

respect to the areas to which the owners of the Family Units of this Condominium enjoy a perpetual license as provided in Article VI above."

In 1976, Community deeded the property that now comprises the Cambridge Village Condominium complex, including the recreational facilities, to Sanford Wasserman, trustee for the Cambridge Village Trust. On June 22, 1976, in the deed records of Lake County, Sanford Wasserman filed a "Declaration of Condominium Ownership for Cambridge Village Condominium," creating the Cambridge Village Condominium Association. As a result of Community's transfer, Cambridge Village Condominium Association gained control over the subject recreational facilities. Cambridge Village's declaration included the following provision regarding the recreational facilities:

"9. Use of Common Areas and Facilities

"It is hereby acknowledged that a perpetual license for the use of the swimming pool, community building and tennis courts located on the Common Area exists in favor of the owners of Family Units of the Cambridge Condominium adjacent to and immediately south of the subject property."

From 1976 to 1997, Cambridge Village and Cambridge shared the recreational facilities, and each association collected maintenance fees from their respective unit owners. With 220 family units, Cambridge collected 67.07 percent of the maintenance costs from its unit owners, and with 108 family units, Cambridge Village collected 32.93 percent of the costs. In 1997, Cambridge objected to paying 67.07 percent of the maintenance costs assessed by Cambridge Village.

On July 9, 1997, Cambridge Village filed a complaint for declaratory judgment against appellee, requesting that the court declare "the rights and duties of the parties as it relates to the payment for the common expenses of the maintenance, repairs and insurance for the recreational facilities" based on an interpretation of the parties' respective condominium declarations. On July 1, 1998, appellee filed the following "Amendment to the Declaration of Condominium Ownership for Cambridge Condominium" in the Lake County Recorder's Office:

" * * * [T]he Declaration of Condominium Ownership for Cambridge is hereby amended by the following:

"DELETE ARTICLE VI entitled 'Perpetual License to Owners of Family Units' in its entirety as contained on Page 17 of the Declaration as recorded in Lake County Records Volume 758, Page 512 et seq.

"DELETE the first paragraph of ARTICLE X, SECTION B(b) entitled, 'Common Expenses' in its entirety as contained on Page 32 of the Declaration as recorded in Lake County Records Volume 758, Page 512 et seq."

On September 8, 1998, appellant filed an amended complaint against appellee alleging that appellee's condominium declaration creates a legal obligation to appellant to pay 67.07 percent of the maintenance cost for the recreational facilities; the amendment to the declaration for Cambridge Condominium is null and void due to appellee's failure to comply with R.C. 5311; and appellee has breached its obligation to pay appellant for a roadway easement, the only means of ingress and egress to the Cambridge Condominium complex.

Both parties moved for summary judgment, and appellee filed a motion to dismiss. On June 1, 1999, the trial court denied appellee's motion to dismiss and granted partial summary judgment to appellant and partial summary judgment to appellee. In its judgment entry, the trial court stated:

"First, upon consideration of Plaintiff's request for the Court to declare Defendant's amendment null and void, the Court finds that making such a determination may possibly extend the Court's authority, especially for the reason that the Court believes such a declaration will not bear on the determinations made herein. Therefore, the Court finds Plaintiff's motion on this issue not well taken.

" * * * [T]he Court finds Plaintiff's motion well taken relative to the common roadway and grants Plaintiff summary judgment in its favor and against Defendant on that issue. * * * Further, the Court finds Plaintiff's motion not well taken as it relates to the recreational facilities. However, Plaintiff can collect from Defendant for its customary and usual usage of the recreational facilities up until the time the lawsuit was filed. The Court further finds that this assessment is appropriately based on Plaintiff's 67.07% calculation."

From this judgment, appellant assigns the following errors:

"[1.] Whether or not the trial court erred when it granted summary judgment for the defendant-appellee and against the plaintiff-appellant on the appellant's declaratory judgment claim for the sharing of costs for the recreational facilities (Count I of the amended complaint) and whether or not the trial court erred when it did not grant summary judgment to the appellant on the appellant's motion for summary judgment.

"[2.] Whether or not the trial court erred when it did not specify a monetary amount for damages when it granted summary judgment to the appellant on Counts II and III of the amended complaint and when the trial court limited the amount of the recovery against the appellee to the date that the lawsuit was filed against appellee.

"[3.] Whether or not the trial court erred when it did not rule on the appellant's claim that the appellee's amendment to its condominium declarations

was null and void and whether or not the trial court should have granted summary judgment to the appellant on this issue."

In its cross-appeal, appellee assigns the following error:

"Does a trial court err when it finds that a legal stranger to a condominium property has the right to sue under R.C. 5311.20 absent standing in tort or contract to do so?"

Because appellant's assignments of error are interrelated, we will address them together. In its first assignment of error, appellant alleges that the parties' respective condominium declarations create a mandatory obligation for appellee to pay 67.07 percent of the costs of maintenance for the recreational facilities, which cannot be revoked by appellee. In its second assignment of error, appellant alleges that the trial court should have specified the amount of damages that appellee was obligated to pay for its usage of the recreational facilities and should not have limited appellant's recovery to the date when the lawsuit was filed. In its third assignment of error, appellant alleges that the trial court should have ruled that appellee's amendment to the Cambridge Condominium declaration was null and void.

Appellant contends that the perpetual license granted to the owners of units within the Cambridge Condominium complex constitutes a license coupled with an interest or an easement and gives them the permanent right to use the recreational facilities located on the Cambridge Village property. Appellant also contends that the Cambridge Condominium declaration imposes upon appellee a mandatory, permanent duty to collect approximately 67 percent of the costs associated with the recreational facilities from its unit owners and remit that money to appellant.

▮▮▮▮ Appellant is correct in its contention that Article VI of the Cambridge Condominium declaration, granting a perpetual license to the unit owners within the Cambridge Condominium complex, confers a legal right to use the facilities upon each of the unit owners; however, we do not agree with appellant's contention that appellee must continue to pay for the maintenance of those facilities even when appellee terminated their right to use them. A license is a privilege given to an individual to do an act upon the land of another without possessing any interest therein and is usually terminable at the will of the licensor. *Mosher v. Cook* (1980), 62 Ohio St.2d 316, 317, 16 O.O.3d 361, 362, 405 N.E.2d 720, 721. If the parties intend the agreement to be permanent in nature, the license is said to be coupled with an interest. *Contract Crush & Screen Co. v. Neff Sand & Gravel, Inc.* (Mar. 7, 1997), Lake App. No. 96–L–043, unreported, 1997 WL 360827. A license coupled with an interest becomes irrevocable, meaning that it is no longer terminable at the will of the licensor, and constitutes

a right to do the act rather than a mere privilege to do it. *Kamenar RR. Salvage, Inc. v. Ohio Edison Co.* (1992), 79 Ohio App.3d 685, 691, 607 N.E.2d 1108, 1111–1112. An irrevocable license is said to be an easement rather than a license. See *id.;* American Law of Property, A Treatise on the Law of Property in the United States (2 Ed.1974), Section 8.112. An easement may be terminated by abandonment, which is effective when there is a "relinquishment of possession with an intent to terminate the easement." *W. Park Shopping Ctr., Inc. v. Masheter* (1966), 6 Ohio St.2d 142, 144, 35 O.O.2d 216, 217, 216 N.E.2d 761, 762–763.

In the instant case, appellee effectively terminated its unit owners' "perpetual licenses" to use the recreational facilities located within the Cambridge Village complex when it enacted the "Amendment to the Declaration of Condominium Ownership for Cambridge Condominium." The amendment deleted the provisions in Cambridge's declaration referring to the perpetual licenses to use the recreational facilities and the obligation to pay for them and specifically stated:

"Any conflict between these deletions and any other provisions of the Declaration and Bylaws shall be interpreted in favor of this amendment revoking the perpetual license to use the Recreational Facilities belonging to Cambridge Village and the responsibility for the costs of same, which shall become effective upon the recording of this amendment, or September 8, 1998, whichever occurs later."

■ Appellant argues that the amendment enacted by appellee must be declared null and void because it was not passed with the unanimous consent of all of Cambridge's unit owners. Appellant relies on R.C. 5311.04:

"(A) * * * No action for partition of any part of the common areas and facilities may be commenced, * * * nor may any unit owner otherwise waive or release any rights in the common areas and facilities.

"* * *

"(D) Except as provided in section 5311.051 of the Revised Code, the percentage of interest in the common areas and facilities of each unit as expressed in the original declaration shall not be altered except by an amendment to the declaration unanimously approved by all unit owners affected. * * *"

■ R.C. 5311.04 does not apply to the amendment enacted by appellee because the recreational facilities are not a part of the Cambridge complex's common areas. The recreational facilities are owned by Cambridge Village. The unit owners of Cambridge had only a "perpetual license" to the facilities. Because the recreational facilities are not a part of Cambridge's condominium property, they cannot be considered a part of Cambridge's common areas. See

R.C. 5311.01(A) and (B). Article XV governs amendments to Cambridge's declaration and provides in part:

"Amendment of Declaration and By–Laws

"Except as provided in Article V above, and in addition thereto, this Declaration and the By–Laws attached hereto as Exhibit B may be amended upon the filing for record with the Recorder of Lake County, of an instrument in writing setting forth specifically the item or items to be amended and any new matter to be added, which instrument shall have been duly executed by the Family Unit owners entitled to exercise at least seventy-five percent (75%) of the voting power of the Association. Such amendment must be executed with the same formalities as this instrument, and must refer to the Volume and Page in which this instrument and its attached exhibits are recorded and must contain an affidavit by the President of the Association that a copy of the amendment has been mailed by certified mail to all mortgagees having bona fide liens of record against any Family Unit ownership."

Although Article VI of Cambridge's declaration provides that each unit owner shall have a perpetual license to use the recreational facilities, subject to regulations for such use as may be from time to time established in its sole discretion by Community or its successors in interest, this clause does not prohibit Cambridge from terminating those licenses. The clause providing that regulations for the use of the recreational facilities can be established by Community or its successor in interest, in its sole discretion, merely refers to regulations concerning the use of the facilities, such as the available hours of use and who may use them; it does not bar Cambridge from relinquishing its right to use the facilities.

Article XV gives appellee the power to amend the declaration and by-laws and provides procedures for the enactment of amendments. Article XV specifically provides an exception to those procedures and states that the provisions in Article XV do not apply to Article V, which sets forth the procedures for creating amendments to add condominium property. If Community had intended that Cambridge be prohibited from deleting Article VI of the declaration, it could have so provided in Article XV, as it did by stating that Article XV does not apply to Article V. Because appellee followed the procedures for amending the declaration set forth in Article XV and 76.088 percent of the Cambridge's unit owners approved the amendment, we cannot say that it was null and void.

Effective September 8, 1998, appellee was not required to pay for the costs of maintenance to Cambridge Village's recreational facilities. The trial court erred by concluding that appellant could collect from appellee for the usage of the facilities only until the time the lawsuit was filed. Appellant's first assignment of

error has no merit. Appellant's second assignment of error has merit, and appellant's third assignment of error has no merit.

■ In appellee's sole assignment of error in its cross-appeal, appellee alleges that appellant had no standing to sue it under R.C. 5311.20. Appellee contends that because appellant is not a part of the Cambridge Condominium Association, it has no standing to contest appellee's management decisions regarding future assessments of its unit owners. Appellant further contends that even if appellant has standing under R.C. 5311.20, all of Cambridge's unit owners should have been joined as defendants pursuant to R.C. 2721.12, which provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the Declaration. No declaration shall prejudice the rights of persons not parties to the proceedings."

The trial court did not err by determining that appellant had standing to sue under R.C. 5311.20 and was not required to join all of Cambridge's unit owners as defendants. R.C. 5311.20 provides:

"In any action relating to the common areas and facilities or to any right, duty, or obligation possessed or imposed upon the unit owners association, by statute or otherwise, the unit owners association may sue or be sued as a separate legal entity."

Because appellant's lawsuit related to appellee's obligation to collect assessments for the costs of maintenance for the recreational facilities used by Cambridge's unit owners, appellant properly sued appellee pursuant to R.C. 5311.20. Appellant's sole assignment of error has no merit.

For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part. This cause is remanded to the trial court so that it can determine the amount of damages resulting from the costs for maintenance owed to appellant until the effective date of the termination, September 8, 1998.

*Judgment accordingly.*

CHRISTLEY, P.J., and DONOFRIO, J., concur.

JOSEPH DONOFRIO, J., retired, of the Seventh Appellate District, sitting by assignment.