Concerning the Application for Water Rights of John and Beverly TONKO, In Fremont County, Colorado.

Johnny F. Tonko and Donna Tonko, Applicants–Appellants

v.

Charles Mallow; City of Florence; Town of Coal Creek; Town of Williamsburg; Town of Rockvale; Phillip Kessler; Naomi Kessler; and Steven J. Witte, Division Engineer, Water Division 2, Opposers–Appellees.

No. 06SA199.

Supreme Court of Colorado, En Banc.

March 19, 2007.

Shaw & Quigg, P.C., Linda McMillan, Pueblo, Colorado, Attorneys for Applicants–Appellants.

MacDougall, Woldridge & Worley, P.C., Julianne M. Woldridge, Colorado Springs, Colorado, Attorneys for Opposers–Appellees.

Justice HOBBS delivered the Opinion of the Court.

In this appeal from the District Court for

Water Division No. 2 ("water court"),[1] the applicants, Johnny and Donna Tonko, contend that the water court erred by granting summary judgment and dismissing their change of water right application with prejudice. The Tonkos' immediate predecessors-in-interest had previously filed a condemnation action in the Fremont County District Court ("district court") to obtain a ditch right-of-way across the land of Charles Mallow, one of the opposers in water court. Mallow resisted the condemnation action in the district court.

Dismissing the condemnation action without prejudice, the district court ruled that the water court, not it, had jurisdiction to determine whether the Tonkos had or could obtain an adjudicated water right, a requisite for maintaining their ditch right-of-way condemnation action across Mallow's land.[2] The district court ruled that "[p]etitioners may seek condemnation of a ditch right-of-way through this court at such time in the future if they can demonstrate an adjudicated water right adequate to support such condemnation action."

The Tonkos' immediate predecessors-in-interest initiated this change of water right case for confirmation of their right to use water under a decree entered by the district court in Case No. 3021 on May 16, 1908. On its face, the decree is for absolute water rights to 1 cubic foot per second (c.f.s.) of water diverted by the Tatman Ditch from Oak Creek, a tributary of the Arkansas River, for irrigation of 9.5 acres of land with an appropriation date of March 1, 1891 and 1 additional acre of land with an appropriation date of March 18, 1901, for a total of 10.5 acres of land irrigated by the 1 c.f.s. of water.

The decree states that the total irrigated acreage is 10.5 acres, but it does not identify specific parcels of land. The Tonkos assert in the water court that the context of the 1908 decree for the Tatman Ditch water rights, including documents contained in the record before us, demonstrates that three persons, as of the decree's entry date, had entered into a rotational use of water agreement and a water rights' conveyance. The Tonkos contend that the effect of the evidence is to show that irrigation of 6.5 acres of land by Joe Picco, 1.0 acre by Martin Milano, and 2.9 acres by John Delisa is covered by the decree. By the deed of May 16, 1908, the same day the decree was entered, the appropriators of the Tatman Ditch water rights, Picco and Milano, conveyed a 2/7ths interest in their water rights to Delisa, the Tonkos' predecessor-in-interest. To use his 2/7ths interest in the Tatman Ditch water rights, Delisa constructed a lateral ditch, known as the Delisa Ditch, to transport his Tatman Ditch water to his 2.9 acre parcel.

Because Delisa and the Delisa Ditch were not mentioned in the 1908 decree, the district court was apparently concerned about the possibility of an undecreed invalid enlargement of the Tatman Ditch water rights. However, as the number of acres irrigated by Picco, Milano, and Delisa under the rotational water use agreement and water rights' conveyance does not exceed the number of acres of land enumerated in the decree, 10.5 acres, the Tonkos assert that there may be no undecreed invalid enlargement of the Tatman Ditch water rights in this case.

These matters are for the water court to consider based on facts in the change of water right proceeding. The Tonkos now own the 2.9 acre Delisa parcel of land and

1. The issues presented to us for review are:
 1. Whether the water court erred in finding that applicants were collaterally estopped from presenting evidence regarding the historic use of the subject water rights.
 2. Whether the water court erred by granting opposers' Motion for Summary Judgment.
 3. Whether the water court erred in finding that applicants' water rights were not historically used for decreed purposes when there was no place of use specified in the decree.
 4. Whether a practical effect of the water court's ruling is that a district court has now, in essence, determined the existence of a water right creating a precedent for district courts to make such rulings in the future.
 4. Whether the water court erred in finding that applicant-appellants' claim lacked substantial factual support, legal support and justification and thus erred in awarding attorney fees.

2. Several constitutional and statutory provisions provide for the private condemnation of a ditch right-of-way across the private land of another. These include article XVI, section 7, and article II, section 14, of the Colorado Constitution, as well as section 37–86–104(1), C.R.S. (2006).

the 1.0 acre Milano parcel. In the water court proceeding, based on the facts surrounding entry of the 1908 decree and the coterminous Picco and Milano conveyance to Delisa, the Tonkos' predecessors-in-interest contended that there has been no undecreed invalid enlargement of the Tatman Ditch water rights and they are entitled to confirmation of their water use right.

In the condemnation proceeding, the district court ruled that it lacked subject matter jurisdiction to determine the water use rights of the Tonkos' predecessors-in-interest. Nevertheless, applying the doctrine of issue preclusion, the water court ruled that "the issue of the historic use of the subject water rights" had been litigated adversely to the Tonkos in the district court and could not be re-litigated in the water court. It granted summary judgment, dismissed the application, and awarded costs and attorneys fees to the opposers. We disagree with these rulings, and reverse the judgment of the water court.

We hold that the district court properly ruled that it lacked subject matter jurisdiction to adjudicate the water use rights of the Delisa interests in the Tatman Ditch water rights. Thus, the Tonkos have not yet had a full and fair opportunity to litigate their claimed entitlement to a water use right under the 1908 decree and the coterminous Picco and Milano conveyance of a 2/7ths interest in the Tatman Ditch water rights to Delisa. Accordingly, the water court erred in granting summary judgment to the opposers and dismissing the Tonkos' application, based on issue preclusion.

## I.

In 1908, Joseph Picco and Martin Milano petitioned the Fremont County District Court for the adjudication of water rights for the Tatman Ditch. In Case No. 3021, the court entered an absolute decree, which recites in material part:

> It is by the court considered, ordered, adjudged and decreed that there be allowed to flow into the said Tatman Ditch out of the waters of Oak Creek, under and by virtue of an appropriation of date March 1st, 1891, being Oak Creek Priority

No. 25.5 and Arkansas Priority No. 394.5, one cubic foot of water per second of time for such time and times as shall be sufficient for the irrigation of nine and one-half (9 1/2) acres of land for the use and benefit of petitioner Joseph Picco; that said one (1) cubic foot of water shall be allowed to flow into said ditch for such further time and times as shall be sufficient for the irrigation of one additional acre of land under and by virtue of an appropriation of date March 18th, 1901, the same being Oak Creek Priority No. 26.5 and Arkansas River Priority No. 410.6 and for the use and benefit of Martin Milano.

The Tonkos assert in the water court the following facts in support of their argument that they have triable issues that were not properly subject to determination by the district court. These include the assertion that, coterminous with entry of the court decree of May 16, 1908, adjudicating the Tatman Ditch rights, Picco and Milano conveyed a 2/7ths interest in their 1891 and 1901 water rights for the Tatman Ditch to John Delisa. Prior to entry of the decree, Picco, Milano, and Delisa had entered into a rotational water use agreement for irrigation of 6.5 acres of land by Picco, 1.0 acre by Milano, and 2.9 acres by Delisa. Together this acreage totals no more than 10.5 acres of land, the number of acres enumerated in the 1908 decree. Affidavits in the record state that a lateral ditch connected to the Tatman Ditch, known as the Delisa Ditch, existed for the purpose of irrigating Delisa's 2.9 acre parcel of land, now owned by the Tonkos, until Mallow obliterated the Delisa Ditch. On May 11, 1970, the 2.9 acres of land owned by Delisa and the 1.0 acre of land owned by Milano, together with the 2/7ths Delisa interest in the Tatman Ditch water rights were conveyed to John and Beverly Tonko, who subsequently conveyed them to Johnny and Donna Tonko in 2004.

The district court ruled in the condemnation proceeding that it lacked subject matter jurisdiction to adjudicate the water use rights of Tonkos' predecessors-in-interest:

> The issue of the existence of a water right, which would provide a right of condemna-

tion ... is an issue that may only be resolved by the water court. This court lacks subject matter jurisdiction over the issue. An undecreed water right cannot be used to support a proceeding in condemnation for a ditch right of way, particularly in this circumstance where the landowners over whose lands the ditch would cross object to the condemnation action.

The district court ruled that the Tonkos' predecessors-in-interest could re-file their condemnation action if they could "demonstrate an adjudicated water right adequate to support such condemnation action."

The Tonkos' predecessors-in-interest did not appeal the district court's jurisdictional ruling. Instead, as the district court directed, they filed a change of water rights application in Water Division No. 2 for confirmation of their. water use rights under the 1908 decree and the coterminous Picco and Milano conveyance to Delisa of a 2/7ths interest in the Tatman Ditch water rights.

However, the water court did not reach the water use right issues posed by the application. Instead, granting the opposers' motion for summary judgment based on the grounds of issue preclusion, the water court dismissed the application with prejudice. It ruled that the Tonkos' predecessors-in-interest had a full and fair opportunity in the condemnation case to litigate the existence of their water use rights, lost on the historic use issue, had not appealed, and therefore could not re-litigate the issue.

The water court found that all elements necessary to establish issue preclusion had been satisfied, and the Tonkos were barred from re-litigating

> the issue of the historic use of the subject water rights and are bound by the Fremont District Court's decision that the Tatman Ditch water rights historically were not used for decreed purposes, because the historically irrigated land for the Tatman Ditch water rights was not the same as the land for which the Tatman Ditch water rights were adjudicated in the May 16, 1908 decree.

We disagree and reverse the water court's judgment.

## II.

We hold that the district court properly ruled that it lacked subject matter jurisdiction to adjudicate the water use rights of the Delisa interests in the Tatman Ditch water rights. Thus, the Tonkos have not yet had a full and fair opportunity to litigate their claimed entitlement to a water use right under the 1908 decree and the coterminous Picco and Milano conveyance of a 2/7ths interest in the Tatman Ditch water rights to Delisa. Accordingly, the water court erred in granting summary judgment to the opposers and dismissing the Tonkos' application based on issue preclusion.

### A.

### Standard of Review

 Summary judgment is a drastic remedy appropriate only when the pleadings and supporting documents show that no genuine issue as to any material fact exists and as a matter of law the moving party is entitled to summary judgment. C.R.C.P. 56(c); *West Elk Ranch, LLC v. United States,* 65 P.3d 479, 481 (Colo.2002); *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 83 (Colo.1999). We review a trial court's grant of summary judgment de novo. *West Elk Ranch, LLC,* 65 P.3d at 481. When determining whether summary judgment is an appropriate remedy, the nonmoving party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved against the moving party. *Id.; Bebo Constr. Co.,* 990 P.2d at 83.

As this case arose in the context of a condemnation action for a ditch right-of-way, and the asserted wrongdoing of the landowner Mallow in destroying the ditch, we first address the law concerning water ditch easements. We then address the law of water court jurisdiction concerning the existence of water use rights and applications for changes of water rights. We then turn to our issue preclusion discussion.

### B.

### Condemnation of a Ditch Right–of–Way

Since the very first Colorado Territorial Legislature in 1861, the right to appropriate

water from the public's water resource for beneficial use has been accompanied by a right to obtain a right-of-way across private lands owned by others, for construction and operation of a water conveyance device, such as a ditch or pipeline, from the water source to the appropriator's place of use. The 1861 Act provides, in connection with the authority to appropriate un-appropriated water for irrigation use, that

> when any person, owning claims in such locality, has not sufficient length of area exposed to said stream in order to obtain a sufficient fall of water necessary to irrigate his land, or that his farm or land, used by him for agricultural purposes, is too far removed from said stream and that he has no water facilities on those lands, *he shall be entitled to a right of way through the farms or tracts of land which lie between him and said stream, or the farms or tracts of land which lie above and below him on said stream,* for the purposes as herein before stated.

An Act to Protect and Regulate the Irrigation of Lands, 1861 Colo. Territorial Laws, § 2, 67 (1861)(emphasis added).

We upheld and applied this act in *Yunker v. Nichols,* 1 Colo. 551, 555 (1872), stating that, "all lands are held in subordination to the dominant right of others, who must necessarily pass over them to obtain a supply of water to irrigate their own lands, and this servitude arises, not by grant, but by operation of law." This provision became a part of the Colorado Constitution of 1876, attended by the requirement that just compensation must be paid for the condemned right-of-way:

> **Right-of-way for ditches, flumes.**
> All persons and corporations shall have the right-of-way across public, private, and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation.

Colo. Const. art. XVI, § 7. *See also* Colo. Const. art. II, § 14. Accordingly, section 37–86–104(1) provides:

**Condemnation of right-of-way.** (1) Upon the refusal of owners of tracts of land through which said right-of-way is proposed to run, to allow passage through their property, the person desiring such right-of-way may proceed to condemn and take same under the provisions of articles 1 to 7 of title 38, C.R.S., concerning eminent domain. (2) State agencies shall, to the maximum extent practicable, cooperate with persons desiring a right-of-way for water conveyance structures.

The "Colorado Doctrine," which arose from the imperative necessity of water scarcity in the western region, includes these features: (1) water is a public resource, dedicated to the beneficial use of public agencies and private persons wherever they might make beneficial use of the water under use rights established as prescribed by law; (2) the right of water use includes the right to cross the lands of others to place water into transportation systems, occupy and convey water through those lands, and withdraw water from the natural water-bearing formations; and (3) the natural water-bearing formations may be used for the transport and retention of appropriated water. This new common law of the arid region created a property-rights-based allocation and administration system that promotes multiple use of a finite resource for beneficial purposes. *Bd. of County Comm'rs v. Park County Sportsmen's Ranch,* 45 P.3d 693, 706 (Colo.2002).

The roots of Colorado water law reside in the agrarian, populist efforts of miners and farmers to resist speculative investment that would corner the water resource to the exclusion of actual users settling into the territory and state. In this context, Colorado's adoption of the principle that the public owns the water, its departure from riparian-based water law, its constitutional limitations on maximum rates that individuals or corporate suppliers can charge for water, the actual beneficial use limitation restricting the amount of water that can be appropriated from the public's water resource, and the right to obtain a right-of-way to construct water facilities across the private lands of another with payment of just compensation, all reflect the anti-monopolistic undergirding

of the state's water law. *High Plains A & M, LLC v. Southeastern Colo. Water Conservancy Dist.*, 120 P.3d 710, 719 n. 3 (Colo. 2005).

As stated in section 37–86–102, C.R.S. (2006), "Any person owning a water right or conditional water right shall be entitled to a right-of-way through the lands which lie between the point of diversion and point of use...." Ditch easements may be established as a prescriptive easement, an easement by estoppel, an easement from prior use, or an irrevocable license. *Lobato v. Taylor*, 71 P.3d 938, 950–51 (Colo.2002); *Hoehne Ditch Co. v. John Flood Ditch Co.*, 68 Colo. 531, 540–41, 191 P. 108, 111–12 (1920); *Graybill v. Corlett*, 60 Colo. 551, 553–54, 154 P. 730, 731 (1916).

The owner of property burdened by a ditch easement may not move or alter that easement unless that owner has the consent of the easement's owner. If consent cannot be obtained, the underlying property owner may apply for a declaratory determination from a court that the proposed changes will not significantly lessen the utility of the easement, increase the burdens on the owner of the easement, or frustrate the purpose for which the easement was created. The right to inspect, operate, and maintain a ditch easement is a right that cannot be abrogated by alteration or change to the ditch. *Roaring Fork Club, LP v. St. Jude's Co.*, 36 P.3d 1229, 1231 (Colo.2001).

In evaluating damage, or the absence of damage, the trial court must not only look at the operation of the ditch for the benefited owner, but also look at the maintenance rights associated with the ditch. If the maintenance rights of the owner of the ditch easement are adversely affected by the change in the easement, then such change does not comport with legal requirements. Furthermore, the water provided to the ditch easement owner must be of the same quantity, quality, and timing as provided under the ditch owner's water rights and easement rights in the ditch. A water right operating in combination with the collection of rights and obligations is a vested property right. These rights cannot simply be replaced with the mere delivery of a fixed quantity of adjudicated water. Ditches are linear delivery systems that function as a part of a whole. Nonconsensual, unilateral alterations jeopardize valuable vested property rights both in the easement and in the water rights exercised by means of the ditch. *Id.* at 1238.

## C.

### Water Court Jurisdiction

Water courts retain exclusive jurisdiction over all water matters. § 37–92–203(1), C.R.S. (2006). Water matters involve determinations regarding the right to use water, the quantification of a water right, or a change in a previously decreed water right. *Crystal Lakes Water & Sewer Ass'n v. Backlund*, 908 P.2d 534, 540 (Colo.1996). Actions to determine legal ownership of a water right fall within the general jurisdiction of district courts. *Id.*

Determining what constitutes a water matter, which falls within the exclusive jurisdiction of the water courts, "turns on the distinction between the legal right to *use* of water (acquired by appropriation), and the *ownership* of a water right." *Id.* (emphasis in original) (internal quotations omitted).

Applications for a change of decreed water rights are within the exclusive jurisdiction of the water courts. *See* §§ 37–92–302(1)(a), 203(1), 103(5), C.R.S. (2006); *State ex rel. Danielson v. Vickroy*, 627 P.2d 752, 758 (Colo.1981) (holding that applications for a change of a water right are water matters over which the water courts retain exclusive jurisdiction).[3]

---

**3.** Abandonment, laches, and adverse possession of water rights claims are also within the jurisdiction of the water court, as they involve issues of the right to use the public's water resource. *See Cent. Colo. Water Conservancy Dist. v. City of Greeley*, 147 P.3d 9, 17–18 (Colo.2006)(laches as defense to enlargement claim); *City & County of Denver v. Middle Park Water Conservancy Dist.*, 925 P.2d 283, 286 (Colo.1996) (abandonment of a water right); *Archuleta v. Gomez*, 140 P.3d 281, 285–87 (Colo.App.2006) (adverse possession of another person's water use right).

## D.

### Change of Water Right Applications

Our early cases recognized that the owner of an absolute water right may convey all or a portion of that right to another person. *See, e.g., Strickler v. City of Colo. Springs,* 16 Colo. 61, 70, 26 P. 313, 316 (1891) (stating that "the right may be transferred by sale so long as the rights of others, as in this case, are not injuriously affected thereby").

 A change of water right application is a proper context for confirming the existence of water use rights claimed by an applicant, or for ascertaining the existence of an undecreed invalid enlargement. Early decrees often stated a flow rate of diversion and a number of acres to be irrigated, but did not specify that the water had to be used on certain parcels of land. The water court may examine documents and take evidence about the facts and circumstances surrounding entry of a decree, in order to determine the decree's setting, intent, meaning, and effect when adjudicating the applicant's water use right or ascertaining the existence of an undecreed invalid enlargement of the decreed water right. *Cent. Colo. Water Conservancy Dist.,* 147 P.3d at 16–17; *Cherokee Metro. Dist. v. Simpson,* 148 P.3d 142, 146–47 (Colo.2006).

 Water use at a place other than that anticipated by the original decree can be used to establish historic use in a change proceeding, but only if the change is inconsequential and there is no question of enlargement or abandonment. *Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson,* 990 P.2d 46, 55–56 (Colo.1999); *Southeastern Colo. Water Conservancy Dist. v. Rich,* 625 P.2d 977, 980 (Colo.1981).

## E.

### Issue Preclusion Not Applicable Here

 Issue preclusion [4] bars relitigation of a legal or factual matter already decided in a prior proceeding. *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo. 2001). Issue preclusion is a judicially created, equitable doctrine intended to "relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions." *Id. See also McNichols v. Elk Dance Colo., LLC,* 139 P.3d 660, 667 (Colo.2006).

 Issue preclusion bars relitigation of an issue when: (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding; (2) the party against whom estoppel is asserted was a party to or is in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Sunny Acres Villa, Inc.,* 25 P.3d at 47 *(citing Bebo Constr. Co.,* 990 P.2d at 85). To determine whether the water court in this case properly applied the doctrine of issue preclusion, we analyze each of the four factors.

### 1. Identity

 To satisfy the first element of issue preclusion, the issue must be identical to the issue properly raised in a prior proceeding for determination by an adjudicatory body. *Bebo Constr. Co.,* 990 P.2d at 85–86. A party must have actually litigated the issue in the prior proceeding and the adjudicatory body must have necessarily decided the issue. *Id.* at 86; *see also Grynberg v. Ark. Ok. Gas Corp.,* 116 P.3d 1260, 1263–64 (Colo.App. 2005). An issue is actually litigated and necessarily adjudicated when a party properly raised the issue and a determination on that issue was necessary to the judgment. *Elk Dance Colo., LLC,* 139 P.3d at 667.

Because "a previous tribunal may not have taken the care needed to adequately determine an issue that would not affect the disposition of the case," issue preclusion only

---

4. "Issue preclusion" and "collateral estoppel" are often used interchangeably to refer to the doctrine that "the final decision of a court on an issue actually litigated and determined is conclusive of that issue in any subsequent suit." *Pomeroy v. Waitkus,* 183 Colo. 344, 350, 517 P.2d 396, 399 (1973). *See also Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005). We use the term "issue preclusion" instead of "collateral estoppel."

applies to issues that were necessarily adjudicated in the prior action. *Bebo Constr. Co.*, 990 P.2d at 86.

In the condemnation case, the only issues the district court determined were that (1) it did not have jurisdiction to adjudicate the water use rights of the Tonkos' predecessors-in-interest under the 1908 decree; (2) the Tonkos' predecessors-in-interest must file an application in water court in order to obtain determination of their water use rights; and (3) if the Tonkos' predecessors-in-interest re-filed their condemnation case after confirming their water use right through an adjudication, they could proceed with the condemnation action for a right-of-way across Mallow's property.

The district court did not rule that Delisa lacked water use rights under the 1908 decree and the coterminous Picco and Milano conveyance of a 2/7ths interest in the Tatman Ditch water rights to Delisa. The existence or non-existence of the Tonkos' water use rights deriving from Delisa are properly the subject of the Tonkos' change of water right application. The district court could not, and did not, reach the issues raised by the Tonkos' application.

The water court erred when it concluded that the district court had adjudicated adversely to the Tonkos their water use rights. The first element of issue preclusion is not satisfied in this case.

### 2. Privity

■■■ The second factor requires that the party against whom issue preclusion is asserted has been a party in the prior proceeding or is in privity with a party to the prior proceeding. *Sunny Acres Villa, Inc.*, 25 P.3d at 47. Here, John and Beverly Tonko were the petitioners in the prior district court case and their successors-in-interest, Johnny and Donna Tonko, are the applicants in this water court case. Johnny and Donna Tonko are in privity with John and Beverly Tonko. The respondent in the district court proceeding, Charles Mallow, is now one of the opposers in the water court case. The parties in the present case are identical to or in privity with the parties in the prior district

court proceeding. The second prong of issue preclusion is satisfied.

### 3. Final Judgment on the Merits

■■■ For the doctrine of issue preclusion to apply, a final judgment on the merits must have been entered in the prior proceeding. A judgment is final when it ends an action "leaving nothing further for the court to do in order to completely determine the rights of the parties involved in the proceeding." *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1282 (Colo.2006) *(quoting Elk Dance Colo., LLC,* 139 P.3d at 668 (internal quotations omitted)).

The district court ordered the case dismissed without prejudice and noted that the Tonkos' predecessors-in-interest "may seek condemnation of a ditch right of way through this court at such time in the future if they can demonstrate an adjudicated water right adequate to support such condemnation action." The Tonkos did not appeal the district court's jurisdictional order, and that order constitutes a final judgment but only on the issue of subject matter jurisdiction.

The district court entered no final judgment regarding Delisa's water use rights to which the Tonkos have succeeded, because it had no jurisdiction to do so. The third element of issue preclusion is not satisfied.

### 4. Full and Fair Opportunity to Litigate

■■■■ The fourth element is satisfied if the party against whom issue preclusion is asserted had a full and fair opportunity to litigate in the first proceeding the matter it seeks to pursue in the second ˙proceeding. Determining whether a party had a full and fair opportunity to litigate requires an analysis of:

[W]hether the remedies and procedures in the first proceeding are substantially different from the proceeding in which [issue preclusion] is asserted, whether the party in privity in the first proceeding has *sufficient incentive* to vigorously assert or defend the position of the party against which [issue preclusion] is asserted, and the extent to which the issues are identical.

*Elk Dance Colo., LLC*, 139 P.3d at 669 (emphasis added). If the underlying issue litigated in the first proceeding is not identical to the issue raised in the second proceeding, the party against whom issue preclusion is asserted does not have sufficient incentive to vigorously litigate the issue. *See Grynberg*, 116 P.3d at 1265–66. Furthermore, if the first proceeding's procedures and purposes are significantly different from the second proceeding, "then the fourth element of issue preclusion has not been satisfied because the party against whom the doctrine is asserted did not have a full and fair opportunity to litigate the issue in the prior proceeding." *Byrd v. People*, 58 P.3d 50, 55 (Colo.2002).

The remedies and procedures in a district court right-of-way condemnation proceeding are substantially different from those of a water court application proceeding. The condemnation action involves issues such as necessity and valuation in determining the compensation award for a ditch or pipeline right-of-way needed for water transport in the exercise of a water right. The prerequisite for maintaining the condemnation action, pursuant to section 7 of article XVI of the Colorado Constitution and section 37–86–104(1), C.R.S. (2006), is an adjudicated conditional or absolute water right, but the adjudication of such a right is not within the district court's jurisdiction. Adjudication of water use rights belongs to the water court.

The water court process involves a division engineer's consultation report, a referee's investigation, discovery, and a trial regarding contested issues of fact involving claimed water use rights. A water court applicant has incentives and the opportunity to try water use questions that a condemnation proceeding lacks.

The existence or non-existence of the Tonkos' water use rights by reason of the 1908 decree and coterminous conveyance by Picco

and Milano to Delisa of a 2/7ths interest in the Tatman Ditch water rights is not identical to the condemnation of a ditch right-of-way issues the district court had before it. The Tonkos' immediate predecessors-in-interest did not have the same incentive or opportunity to litigate water use matters in the condemnation proceeding as they are provided by statute in the water court.

We conclude that the Tonkos' predecessors-in-interest did not have a full and fair opportunity to litigate their water use rights in the condemnation action. The fourth element of issue preclusion is not satisfied.

▮ The Tonkos argue that irrigation of their land is within the 1908 decree and that an undecreed invalid enlargement has not occurred in regard to the Delisa interest in the Tatman Ditch water rights. The Tonkos have asserted facts in support of this contention that are properly triable in the water court, not the district court. *See Cent. Colo. Water Conservancy Dist.*, 147 P.3d at 16.[5]

Whether Mallow lawfully extinguished the Delisa Ditch right-of-way across his land and whether the Tonkos proceed with a condemnation action turn on the outcome of their change of water rights application.[6] Because the Tonkos' application to confirm their water use rights comes within the exclusive jurisdiction of the water court, it must be allowed to proceed.

## III.

Accordingly, we reverse the water court's dismissal of the Tonkos' change of water right application and its award of attorneys fees and costs in favor of the opposers against the Tonkos. We remand this case to the water court for further proceedings consistent with this opinion.

Justice EID specially concurs, and Justice COATS joins in the special concurrence.

---

**5.** Water use at a place other than anticipated by the original decree can be used to establish historic use in a change proceeding, if the change is inconsequential and there is no question of enlargement or abandonment. *Santa Fe Trail Ranches Prop. Owners Ass'n.*, 990 P.2d at 55–56; *Southeastern Colo. Water Conservancy Dist.*, 625 P.2d at 980. Here, the Tonkos assert that the Picco, Milano, and Delisa lands were in close proximity to each other and no change in point

of diversion or of rate of diversion from the source of supply, Oak Creek, is involved.

**6.** In *Graybill v. Corlett*, 60 Colo. at 553–54, 154 P. at 731, the person whose ditch was destroyed commenced at first a condemnation suit, and then learned he had a cause of action based on irrevocable license.

Justice EID, specially concurring.

I agree with the majority that the application of issue preclusion by the water court in this case was improper because the district court's prior dismissal was based on its lack of subject matter jurisdiction. Here, the district court examined the 1908 decree and properly concluded that (1) the decree gave no water rights, on its face, to the Tonkos or their predecessors-in-interest, and (2) the only place that the Tonkos could obtain an adjudication of such rights would be from a water court. *See* § 37–92–203(1), C.R.S. (2006) (giving water courts exclusive jurisdiction over water matters). The water court, in its decision below, could not rely on issue preclusion because there had been no decision by a "court of competent jurisdiction." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

The majority's opinion, however, goes beyond this essential conclusion. *See, e.g.*, maj. op. at 405 and 407 n. 5 (describing the legal standards by which the Tonkos' claim under the rotational water use agreement should be judged). In my view, the water court on remand should start from a clean slate when considering the merits of the Tonkos' claim. I therefore concur only in the judgment that the water court's reliance on issue preclusion in this case was erroneous.

I am authorized to state that Justice COATS joins in this special concurrence.