24CA0445 Estate of Christensen v Vail Mountain 03-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0445
Eagle County District Court No. 22CV30155
Honorable Paul R. Dunkelman, Judge

Estate of Kail A. Christensen,

Plaintiff-Appellant,

v.

Vail Mountain View Residences Phase II, LLC; Vail Mountain View Residences on Gore Creek Owners' Association, Inc.; and Altus Vail Residences Owners' Association, Inc.,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE PAWAR
Harris and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

Allen Vellone Wolf Helfrich & Factor P.C., Patrick D. Vellone, Lance Henry, Denver, Colorado, for Plaintiff-Appellant

Brownstein Hyatt Farber Schreck, LLP, Justin L. Cohen, Sean S. Cuff, Max Porteus, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, the Estate of Kail A. Christensen, appeals the district court's grant of summary judgment to defendants on the Estate's single declaratory judgment claim.  The Estate sought a declaration that Christensen's right to use parking spaces and storage lockers in a Vail condominium building passed to the Estate upon his death.  The district court held that Christensen's right to use the spaces and lockers terminated upon his death and therefore entered summary judgment in favor of defendants.  The Estate appeals, and we reverse and remand with directions.

## I.     Background

¶ 2     Christensen and his business partner each owned half of a condominium development project in Vail.  During development, the business partner bought Christensen's interest for several million dollars.  As part of the buyout, they executed a separate contract that allowed Christensen to use four parking spaces and three storage lockers in the development's parking facility.  The contract was titled "Parking License Agreement" and repeatedly referred to Christensen's right to use the parking spaces and lockers as a license.  However, the agreement also provided that Christensen's "license" was "perpetual and irrevocable."

¶ 3    Christensen's will purported to give his right to use the parking spaces and lockers to his sister. Consequently, upon his death, the Estate filed a single declaratory judgment claim seeking a declaration that his right to the parking spaces and lockers was a covenant that ran with the land and automatically passed to his heirs. The defendants in the action were entities connected to the development: Vail Mountain View Residences Phase II, LLC; Altus Vail Residences Owners' Association, Inc.; and Vail Mountain View Residences on Gore Creek Owners' Association, Inc. (Gore). All the defendants answered the complaint and one of them, Gore, filed a declaratory judgment counterclaim seeking the inverse of the Estate's claim: a declaration that Christensen's right to use the parking spaces and lockers was a license that expired on his death and did not pass to his heirs.

¶ 4    The Estate and non-Gore defendants filed cross-motions for summary judgment on the Estate's claim. The district court granted summary judgment to the non-Gore defendants, ruling that the contract was unambiguous in granting Christensen only a license that expired on his death and did not pass to his heirs. Gore was not included in the summary judgment order.

¶ 5    Weeks after the summary judgment order entered, Gore moved the court to clarify that its summary judgment ruling applied to Gore as well.  The court granted that motion.

¶ 6    The Estate appeals, arguing that the district court erred by ruling as a matter of law that the contract granted Christensen only a license that expired upon his death.  We agree that summary judgment was not warranted.  But before we get to that, we first address and reject defendants' arguments that we lack appellate jurisdiction and that the Estate's precise appellate arguments are not properly before us.

## II.    Appellate Jurisdiction

¶ 7    Defendants argue that we lack jurisdiction over this appeal because it was filed more than forty-nine days after the final judgment entered.  We review the existence of appellate jurisdiction de novo.  *See Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 15.  We disagree with defendants.

¶ 8    We have jurisdiction over appeals filed within forty-nine days of a final judgment.  *Id.* at ¶ 16.  In this context, a judgment is final if it ends the action and "leav[es] nothing further for the court pronouncing it to do in order to completely determine the rights of

3

the parties involved in the proceeding." *Wilson v. Kennedy*, 2020 COA 122, ¶ 7 (quoting *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n.2 (Colo. 1982)).

¶ 9 The district court entered the summary judgment order on January 29, 2024. But this was not a final judgment for purposes of appeal because it did not completely determine the rights of all parties. As mentioned above, the summary judgment order granted the non-Gore defendants summary judgment on the Estate's claim but did not mention Gore. That omission caused Gore to file the motion to clarify that the summary judgment ruling applied to it as well — in other words, Gore asked the court to confirm that it had fully determined Gore's rights in addition to those of the other defendants. The district court granted that motion to clarify on February 20, 2024, stating for the first time that its summary judgment ruling extended to Gore. It was not until this order that the district court completely determined the rights of all parties in the case. Consequently, this was the final appealable judgment. And the Estate filed its notice of appeal on March 19, 2024, well within forty-nine days of the February 20 order.

¶ 10    In arguing that its appeal was timely, the Estate suggests that if anything, its appeal may be premature because the district court never explicitly ruled on Gore's counterclaim. We disagree.

¶ 11    Gore's counterclaim was the exact inverse of the Estate's claim — the counterclaim sought a declaration that Christensen's right *did not pass* to his heirs while the claim sought a declaration that Christensen's right *did pass* to his heirs. Therefore, resolving the Estate's claim in favor of defendants necessarily resolved the parties' rights in the counterclaim. Once the district court clarified on February 20 that the summary judgment on the Estate's claim applied to all defendants, all the parties' rights were resolved and there was a final appealable judgment. And because the Estate filed this appeal within forty-nine days from that order, we have jurisdiction over the appeal.

III.   The Estate's Arguments are Properly Before Us

¶ 12    At oral argument, defendants conceded that the Estate's appellate argument was preserved and has been fully briefed by the parties. Nevertheless, they argue that we should decline to review the district court's judgment because the claim the Estate advances on appeal differs from the claim pleaded in the complaint.

Defendants point out that in the complaint the Estate alleged that Christensen received a "covenant running with the land" but at summary judgment and on appeal the Estate argued that Christensen received a servitude or easement-like interest that ran with the land and passed to his heirs. According to defendants, this discrepancy somehow precludes us from addressing the Estate's servitude argument on appeal. We disagree for two reasons.

¶ 13 First, the district court addressed the servitude/easement argument in its summary judgment order, thereby preserving it for our review. *See Rinker v. Colina-Lee*, 2019 COA 45, ¶ 26 (trial court's sua sponte ruling on an issue preserves that issue for appellate review). Second, as defendants conceded at oral argument, no prejudice resulted from the technical difference between the Estate's allegation in the complaint and its argument at summary judgment and on appeal. At all stages, the Estate argued that the agreement gave Christensen an interest that

survived his death and passed to his heirs.[1]  And the issue is now fully briefed by the parties.

¶ 14    With that we turn to the merits.

### IV.    Summary Judgment

¶ 15    We review a district court's grant of summary judgment de novo.  *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 7.  Summary judgment is a drastic remedy that is appropriate only when the material facts are undisputed and the moving party is entitled to judgment as a matter of law.  *Id.*

¶ 16    We also interpret contracts, like the Parking License Agreement here, de novo.  *DA Mountain Rentals, LLC v. Lodge at Lionshead Phase III Condo. Ass'n*, 2016 COA 141, ¶ 16.  In doing so, our goal is to determine and give effect to the parties' intent.  *See Gagne v. Gagne*, 2014 COA 127, ¶ 51.  The best indication of the parties' intent is the language the parties agreed to in the contract itself.  *Id.*  If the language of the contract is unambiguous, we enforce the plain meaning of its terms.  *Id.*  However, if the language

---

[1] What's more, paragraph 20 of the complaint refers to Christensen's right to use the parking spaces and lockers as "a servitude that runs with the land."

of the contract is ambiguous, courts may look to extrinsic evidence to resolve the ambiguity and clarify the parties' intent. *Id.* at ¶ 52.

¶ 17    A contract term is ambiguous if it is susceptible of more than one reasonable interpretation. *Id.* In assessing whether a contract is ambiguous, we seek to harmonize and give effect to all contract provisions so that none are rendered meaningless. *Id.* at ¶ 53. Whether a contract is ambiguous is a question of law we review de novo. *Id.* at ¶ 50. But once a contract is determined to be ambiguous, the determination of the parties' intent based on extrinsic evidence is a question of fact. *Id.* at ¶ 52.

¶ 18    The district court here determined that the language of the Parking License Agreement was unambiguous in granting Christensen a license that expired upon his death. Reviewing this determination de novo, we disagree. We conclude that the agreement was ambiguous about whether it granted Christensen a license or a servitude that could pass to the Estate.

¶ 19    We arrive at this conclusion by first reviewing the differences between a license and other property interests that run with the land. We then apply those principles to the contract here.

## A.   Servitudes and Licenses

¶ 20   A servitude is a covenant that runs with the land. *City of Steamboat Springs v. Johnson*, 252 P.3d 1142, 1147 (Colo. App. 2010). Often, servitudes involve two estates, the dominant estate and the servient estate. The benefit of the servitude attaches to the dominant estate and automatically passes to subsequent owners or possessors of that estate. Restatement (Third) of Prop.: Servitudes § 1.1 cmt. b (Am. L. Inst. 2000). Likewise, the burden of the servitude attaches to the servient estate and automatically passes to subsequent owners or possessors of that estate. *Id.*

¶ 21   However, servitudes can also exist without a dominant estate. These are servitudes in gross. In this scenario, an individual or entity holds a benefit that burdens the servient estate. The benefit is held by the person or entity "without any necessary connection to ownership or occupancy of other property" — i.e., no connection to a dominant estate. *Id.* § 5.8 cmt. b. The benefits of a servitude in gross are generally "freely transferable unless contrary to the intent or expectations of the creating parties" and "devolve on death of the owner in the same manner as other real-property interests." *Id.*; *see Sinclair Transp. Co. v. Sandberg*, 2014 COA 76M, ¶ 39

(recognizing that benefits in gross are freely transferable). However, the benefit of a servitude in gross is not transferable if the parties intend to make the benefit personal. *See* Restatement (Third) of Prop.: Servitudes § 4.6 cmts. b, d.

¶ 22    A license is not a servitude. *See id.* § 2.2 cmt. h. Unlike a servitude, a license is not an interest in another's land, but is instead a personal privilege to do something on another's land. *See Roaring Fork Club, LLC v. Pitkin Cnty. Bd. of Equalization*, 2013 COA 167, ¶ 41. "The principal difference between a servitude and a license is that a license is revocable at will." Restatement (Third) of Prop.: Servitudes § 2.2 cmt. h. And because a license is a personal privilege and is not an interest in real property, it does not necessarily pass to the licensee's heirs. *See* Restatement (First) of Prop. § 517 (Am. L. Inst. 1944) ("A license is assignable in so far as it was intended in its creation to be assignable.").

¶ 23    So how do courts determine whether parties to an agreement created a servitude or a license? There are no magic words — intent to create a servitude can be express or implied from reading the agreement as a whole and considering the language used in context. Restatement (Third) of Prop.: Servitudes § 2.2 cmts. b, d.

¶ 24 The label the parties assign the right may be significant, but it is not determinative. *Id.* cmt. h.

¶ 25 The formality and revocability of the grant are also important. "[U]se of formality appropriate to a land transaction usually indicate[s] that the parties intended a servitude." *Id.* And if the grantor does not have the power to revoke, "the instrument is effective to create a servitude." *Id.*

¶ 26 Indeed, in the water law context, our supreme court has seemingly recognized that an irrevocable license is actually a servitude, stating that "[d]itch easements may be established as . . . an irrevocable license."[2] *In re Tonko,* 154 P.3d 397, 404 (Colo. 2007). Courts in other jurisdictions have echoed this principle. *See Cambridge Vill. Condo. Ass'n v. Cambridge Condo. Ass'n,* 743 N.E.2d 954, 958 (Ohio Ct. App. 2000) ("An irrevocable license is said to be an easement rather than a license."); *Closson Lumber Co. v. Wiseman,* 507 N.E.2d 974, 976 (Ind. 1987) ("[A]n 'irrevocable license' is in legal effect no different than an easement . . . .").

---

[2] Easements are a type of servitude. Restatement (Third) of Prop.: Servitudes § 1.1(1) cmt. b (Am. L. Inst. 2000).

¶ 27    With these principles in mind, we turn to the language of the Parking License Agreement to assess whether there was any ambiguity about what Christensen was granted.

### B.    The Agreement Is Ambiguous

¶ 28    There is no question that the agreement labels Christensen's right to use the parking spaces and lockers as a license.  The agreement is titled "Parking License Agreement," and it refers throughout to the grant of a "license" to use the parking spaces and storage lockers in question.  But as explained above, that does not end our inquiry.  *See* Restatement (Third) of Prop.: Servitudes § 2.2 cmt. h (labels are not determinative).  Instead, our task is to read contested terms in the context of the agreement as a whole and to harmonize and give effect to all provisions.  *See Gagne*, ¶ 53.  And other provisions in the agreement allow for two different yet reasonable interpretations of what Christensen received.

¶ 29    Despite labeling what Christensen received as a license, the agreement provides that "the License shall be perpetual and irrevocable."  This suggests that the "License" was actually a servitude.  *See* Restatement (Third) of Prop.: Servitudes § 2.2 cmt. h; *Tonko*, 154 P.3d at 404.  That said, a different term of the

12

agreement contemplates the "License" being revocable, thereby suggesting it is a license ("Upon any revocation or termination of this Agreement or the rights granted herein . . . .").

¶ 30 The agreement also contemplates Christensen having successors or assigns to his rights under the agreement: "This Agreement may not be amended or terminated except by written instrument signed by the parties hereto or their permitted respective successors and assigns." Because licenses are personal to the grantee and do not automatically pass to successors, the fact that the agreement contemplated Christensen's successors suggests that Christensen was granted more than a license. *See* Restatement (Third) of Prop.: Servitudes § 4.6 cmt. d (stating that using words like "heirs," "successors," or "assigns" is not "necessary" to indicate an intent that a servitude is transferable, thereby implying that using such words suggests an intent to create a transferable servitude).

¶ 31 Moreover, the agreement is a seven-page contract with recitals and sixteen different sections. This level of formality is similar to that used in contracts for the sale and transfer of land and likewise suggests the parties intended to create a servitude.

¶ 32     Based on all this, we conclude that there are two reasonable interpretations of the agreement.  On the one hand, it would be reasonable to interpret the agreement as creating a license based on the use of that term throughout the agreement.  On the other hand, it would also be reasonable to interpret the agreement as creating a servitude because the agreement (1) provides that the "License" is perpetual and irrevocable; (2) contemplates Christensen having successors and assigns to his rights under the agreement; and (3) is a formal contract on the level of one to sell or transfer land.  We therefore conclude that the agreement is ambiguous.[3]

¶ 33     We recognize that defendants encourage us to rely on two other agreement provisions in our ambiguity analysis.  But we conclude that these provisions shed no light on whether the agreement is ambiguous or not.  Defendants first point to this language in the agreement: "[Christensen] has no estate, easement, or interest . . . other than the License granted herein."  According to

---

[3] The fact that the agreement contains a merger clause does not impact our ambiguity analysis.  A merger clause merely indicates that all terms the parties intended to be bound by are found in the written agreement.  *See LTCPRO, LLC v. Johnson,* 2024 COA 123, ¶ 22.  The existence of a merger clause does not inform whether those terms are ambiguous.

defendants, this is the parties' explicit disclaimer that Christensen was granted any real property interest. But there is no question that Christensen received "the License granted herein." And that "License" is one that the parties deemed "perpetual and irrevocable." As explained above, such a license may be a servitude, which is a real property interest. *See* Restatement (Third) of Prop.: Servitudes § 2.2 cmt. h; *Tonko,* 154 P.3d at 404; *Cambridge Village Condo. Ass'n,* 743 N.E.2d at 958; *Closson Lumber,* 507 N.E.2d at 976.

¶ 34 Second, defendants point us to a provision of the agreement that says, "No person other than Grantor and [Christensen] shall be deemed a beneficiary under this Agreement for any purpose whatsoever." Defendants argue that this means Christensen's rights under the agreement cannot pass to his heirs. But beneficiaries are not necessarily the same as heirs or successors. And, as explained above, another provision of the agreement contemplates Christensen having successors and assigns. Thus, the provisions defendants rely on are not relevant to our ambiguity analysis.

¶ 35    Because the language in the agreement was ambiguous as to whether it created a license or a servitude, the determination of the parties' intent on this issue becomes a question of fact that can be determined by the admission and weighing of extrinsic evidence. *See Gagne*, ¶ 52.[4]  Appellate courts are ill-equipped to conduct such factfinding in the first instance.  We therefore remand the case to the district court to engage in this factfinding.

## V.    Disposition

¶ 36    The district court's order granting defendants summary judgment is reversed.  The case is remanded to the district court with directions to conduct further proceedings consistent with this opinion.  Nothing in this opinion forecloses the district court from resolving this case on summary judgment.  We hold only that the agreement is ambiguous as to whether it created a license or a

---

[4] Courts may use extrinsic evidence to interpret ambiguous terms of a contract, even if that contract is fully integrated.  *See* Restatement (Second) of Contracts § 212(2) (Am. L. Inst. 1981) ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."); *Nw. Cent. Pipeline Corp. v. JER P'ship*, 943 F.2d 1219, 1226 (10th Cir. 1991).

servitude and the parties' intent on that issue can be determined only by reviewing evidence outside the language of the agreement.

JUDGE HARRIS and JUDGE GROVE concur.